UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


KALEMBA BALIMUNKWE,                          Case No. 1:14-cv-327
            Plaintiff,                       Black, J.
                                             Litkovitz, M.J.
      vs.

BANK OF AMERICA AS SUCCESSOR
TO FIRST FRANKLIN FINANCIAL
CORPORATION, et al.,                         **ORDER AND REPORT**
            Defendants.                      **AND RECOMMENDATION**

      Plaintiff brings this action for mortgage fraud against defendants Bank of America, N.A.

(BOA) and Residential Credit Solutions, Inc. (Residential Credit). The matter is before the

Court on defendants' motion to exclude plaintiff's expert Curtis Baggett from future motions,

hearings and any trial of this matter (Doc. 71), plaintiff's response in opposition to the motion

(Doc. 73), and defendants' reply memorandum in support of the motion (Doc. 84). Plaintiff has

also filed a supplemental memorandum in opposition to defendants' motion to exclude (Doc. 90)

and a "Supplemental Exhibit to Plaintiff's Opposition to Defendant's Motion to Exclude Expert

Curt Baggett From Future Motions Hearings and Trial" ("Supplemental Report") (Doc. 74).

Defendant BOA has filed a motion to strike the Supplemental Report (Doc. 80), which plaintiff

opposes. (Doc. 93). In addition, defendants move to strike plaintiff's supplemental

memorandum in opposition to defendants' motion to exclude Mr. Baggett (Doc. 90) and

plaintiff's amended motion for summary judgment filed on that same date (Doc. 89). (Doc. 97).

Plaintiff has filed a motion seeking leave of Court to file out of time a response in opposition to

defendants' motion to strike his supplemental memorandum and amended motion for summary

judgment. (Doc. 103). This matter is also before the Court on plaintiff's motion for an extension

of time to complete the expert report (Doc. 72), and plaintiff's request for the Court to rule on defendants' motion to exclude Mr. Baggett as an expert witness. (Doc. 104).

## I. Background

Plaintiff originally filed this action in state court. (Doc. 1). The case was removed to the District Court on April 22, 2014. (*Id*.). The Court issued a Calendar Order on July 18, 2014, which established the following deadlines: September 26, 2014 for the parties to identify and produce primary expert reports; November 21, 2014 for the parties to disclose and produce rebuttal expert reports; December 19, 2014 for the completion of discovery; and February 20, 2015 for the filing of dispositive motions. (Doc. 25).

On September 10, 2014, plaintiff filed a "Notice" with the Court identifying "Curt Baggett" as his "writing expert." (Doc. 38). Attached to the Notice were two reports of Mr. Baggett: "Expert First Report" (Exh. XI) and "Forensic Report" (Exh. OPJ5). In the expert report, Mr. Baggett states that he examined and compared six documents with "known" signatures of plaintiff to "questioned documents" that purportedly bore plaintiff's signature. Mr Baggett identifies the questioned documents as loan documents with First Franklin Financial Corporation dated February 10, 2004. He opines that "[b]ased upon thorough analysis of these items, and from an application of acceptable forensic document examination tools, principles and techniques," a different person authored and forged plaintiff's name on the questioned documents. (*Id*. at 3). Attached to the report are Mr. Baggett's background information and the documents bearing the signatures he compared. (*Id*. at 4-17).

The "Forensic Report" includes Mr. Baggett's curriculum vitae; the documents bearing the signatures he compared; the "basis and reasons" for his expert opinion; a list of the approximately 100 cases in which Mr. Baggett states he has "been qualified and/or appointed by

2

the Court as an Expert and/or [has] testified in trial or by deposition from 2005-2014"; and a list of publications Mr. Baggett has authored.  (Doc. 38 at 18-64, Exh. OPJ5).

After plaintiff filed the expert report, the Court extended the discovery deadline to March 30, 2015, and the dispositive motion deadline to May 29, 2015.  (Doc. 55).  A final pretrial conference was tentatively set for September 2015 and a bench trial was tentatively scheduled for October 2015 before the District Judge.  (*Id.*).

Subsequently, on March 16, 2015, plaintiff filed a supplement to the expert's report to include the compensation Mr. Baggett was being paid for his services in this matter.  (Doc. 65).  The Court thereafter granted an extension of the discovery deadline to April 16, 2015, at plaintiff's request.  (Doc. 68).  On April 29, 2015, defendants filed their motion to exclude Mr. Baggett as an expert from this litigation.  (Doc. 71).  On May 15, 2015, plaintiff filed his motion for extension of time to complete the expert report (Doc. 72), his response in opposition to defendants' motion to exclude (Doc. 73), and his second supplement to the expert report.  (Doc. 74).  On May 22, 2015, plaintiff filed a motion for a hearing on defendants' motion to exclude Mr. Baggett as an expert and a motion to extend the dispositive motion deadline until after a hearing had taken place.  (Docs. 77, 78).  The Court set defendants' motion to exclude Mr. Baggett as an expert witness from these proceedings for a hearing and granted plaintiff ten days from the date the Court issued its ruling on the motion to exclude to respond to defendants' motion for summary judgment.  (Doc. 88).  A hearing on the motion to exclude was held on June 25, 2015 (Doc. 99), the motion is fully briefed, and the matter is ripe for decision.

## II. The parties' preliminary motions

### A. Plaintiff's motion for extension of time to complete the expert report (Doc. 72) and defendants' motion to strike the second supplement to the expert report (Doc. 80)

Plaintiff filed his motion for extension of time to complete the expert report on May 15, 2015. (Doc. 72). Plaintiff seeks to supplement the expert report with additional information, which plaintiff filed on that same date. (Doc. 74). As grounds for his motion, plaintiff alleges that defendants failed to identify primary and expert rebuttal witnesses by the deadlines established in the Calendar Order (*see* Doc. 25); defendants did not challenge plaintiff's expert report until February 2015, three months after the disclosure deadline; and plaintiff's delay in supplementing the expert report will not harm defendants. Defendants move to strike the second supplement to the expert report. (Doc. 80).

The deadline for the filing of primary expert reports was September 26, 2014. (Doc. 25). Plaintiff filed an expert report on September 10, 2014 (Doc. 38) and a supplement to the expert report in March 2015 (Doc. 65). Plaintiff waited two more months until May 15, 2015, to seek to supplement his expert report a second time. (Doc. 74). This was eight months after the September 2014 deadline for filing primary expert reports. Plaintiff has not offered a reasonable explanation for not including this information in either the original report or the supplemental report. Plaintiff alleges only that defendants failed to comply with the Calendar Order because they did not identify any primary or rebuttal experts by the deadlines established in the Calendar Order, and they did not notify plaintiff of any deficiencies in Mr. Baggett's original expert report until February 2015. However, defendants were not required to name an expert to defend against plaintiff's claims in this lawsuit. Further, plaintiff has not alleged how defendants' omission inhibited plaintiff's ability to file his complete expert report. Finally, plaintiff was obligated to file a timely expert report irrespective of whether defendants raised objections to the report. For

these reasons, plaintiff's motion for extension of time to complete the expert report (Doc. 72) is

denied.  Defendants' motion to strike the second supplement to the expert report (Doc. 80) is

granted.  The second supplement to the expert report (Doc. 74) will be stricken from the record.

**B. Defendants' motion to strike plaintiff's amended motion for summary judgment and plaintiff's supplemental memorandum in opposition to defendants' motion to exclude expert (Doc. 97) and plaintiff's motion to file response to defendants' motion to strike out of time (Doc. 103)**

Defendants move to strike plaintiff's amended motion for summary judgment (Doc. 89)

and supplemental memorandum in opposition to defendants' joint motion to exclude (Doc. 90)

on the ground both are impermissible pleadings under S.D. Ohio Civ. R. 7.2(a)(2).  (Doc. 97).

Rule 7.2(a)(2) allows only for the filing of a motion, an opposing memorandum, and a reply

memorandum with no additional memoranda permitted "except upon leave of court for good

cause shown."  S.D. Ohio Civ. R. 7.2(a)(2).  Plaintiff seeks leave to file a response to defendants'

motion to strike out of time.  (Doc. 103).

The Court will deny plaintiff's request to file a response to defendants' motion to strike

out of time.  (Doc. 103).  Plaintiff has not offered a valid reason for failing to file a timely

response to defendants' motion to strike.  Plaintiff simply states he was confused as to when his

response was due.  (*Id.*).  Moreover, a response in opposition to defendants' motion to strike

would be futile because neither the amended motion for summary judgment nor the supplemental

memorandum is a proper filing for the reasons explained below.

Plaintiff filed his original motion for summary judgment on May 29, 2015 (Doc. 82), the

same date the dispositive motion deadline expired.  (*See* Doc. 55).  Plaintiff filed the amended

motion for summary judgment on June 4, 2015.  (Doc. 89).  Plaintiff did not seek leave of Court

to file the amended motion for summary judgment.  Nor has plaintiff shown good cause for filing

the amended motion.  Plaintiff did not offer any explanation in the amended motion for summary

judgment as to why it was necessary to amend the original motion. Further, to allow plaintiff to amend the motion for summary judgment would unfairly prejudice defendants, who have already filed memoranda in opposition to plaintiff's original motion for summary judgment. (Docs. 92, 98). The amended motion for summary judgment (Doc. 89) will therefore be stricken from the record.

Plaintiff's supplemental memorandum in opposition to defendants' motion to exclude (Doc. 90) will also be stricken from the record. Plaintiff filed a memorandum in opposition to the motion (Doc. 73) and defendants filed a reply memorandum in support of the motion (Doc. 84), the only permissible filings in connection with the motion, before plaintiff filed the supplemental memorandum. Plaintiff was therefore required to obtain leave of court to file an additional pleading, which he failed to do. Even if plaintiff had sought leave of court, plaintiff has not shown good cause for filing the supplemental memorandum. To the contrary, plaintiff expressly alleges in the supplemental memorandum that defendants "rehash the same issues" to which plaintiff has previously responded. (Doc. 90 at 1).

Accordingly, plaintiff's motion for leave to file a response to defendants' motion to strike (Doc. 103) is denied. Defendants' motion to strike (Doc. 97) is granted. Plaintiff's amended motion for summary judgment (Doc. 89) and plaintiff's supplemental memorandum in opposition to defendants' joint motion to exclude plaintiff's expert (Doc. 90) will be stricken from the record.

### III. Defendants' motion to exclude plaintiff's expert (Doc. 71)

#### A. Introduction

Defendants move to exclude plaintiff's expert from these proceedings on the grounds plaintiff did not timely file the expert report, the expert report fails to comply with the

requirements of the Federal Rules, and Mr. Baggett does not qualify as an expert under Fed. R.

Evid. 702[1]. (Doc. 71). Plaintiff disputes each of defendants' contentions. (Doc. 73). Plaintiff

alleges that he timely identified his expert and provided most of the information required to be

disclosed in an expert report in a timely manner; the expert report satisfies the requirements of

Fed. R. Civ. P. 26(a)(2)(B); and Mr. Baggett is qualified as an expert in handwriting comparison

analysis. In reply, defendants argue that plaintiff has not sufficiently rebutted any of the

arguments presented in their joint motion. (Doc. 84). Defendants contend that plaintiff has not

addressed the deficiencies in the original expert report, which they have consistently challenged.

Defendants also cite numerous court decisions that have analyzed Mr. Baggett's qualifications

and concluded he is not qualified to offer expert opinions.

On June 3, 2015, the Court granted plaintiff's request to set a hearing on defendants'

motion to exclude. (Doc. 88). The hearing was set for June 25, 2015. (*Id*.). Plaintiff and

opposing counsel, who traveled to Cincinnati from out of town, were present for the hearing.

Mr. Baggett did not attend the hearing. Plaintiff represented to the Court that he had received an

email from Mr. Baggett's office at 3:17 p.m. on June 24, 2015, the day before the hearing,

informing plaintiff that Mr. Baggett was ill and could not travel to Cincinnati from Texas for the

hearing. Plaintiff did not forward the email from Mr. Baggett's office to the undersigned's

chambers until 5:43 p.m. on June 24, which was after the close of business. Because plaintiff

had failed to provide timely notice of Mr. Baggett's inability to attend the hearing, the Court

convened the hearing and gave plaintiff an option: He could proceed with the hearing without

Mr. Baggett present, or the Court would reschedule the hearing and grant defendants' motion for

attorney fees. Plaintiff chose to proceed with the hearing in Mr. Baggett's absence. The Court

---

[1] Fed. R. Evid. 702 sets forth the circumstances under which a witness who is qualified as an expert may testify in the form of an opinion.

has considered the arguments presented by plaintiff and defendants' counsel at the hearing, together with the parties' filings related to the motion to exclude, in reaching its decision on the motion.

**B. Timeliness of plaintiff's expert report**

*i. The parties' positions*

Defendants allege that plaintiff did not timely submit an expert report that complies with Fed. R. Civ. P. 26(a)(2)(B). Defendants acknowledge that plaintiff identified Curtis Baggett as his handwriting expert on September 10, 2014 (Doc. 38), prior to the September 26, 2014 deadline for disclosure of expert witnesses and production of expert reports established in the Court's July 18, 2014 Scheduling Order. (Doc. 71 at 3, citing Doc. 25). However, defendants allege that the expert report did not comply with Rule 26(a)(2)(B), which provides that an expert report must include the following information:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Defendants contend that the report did not include the facts or data considered by Mr. Baggett in forming his opinions; a list of all other cases in which he testified as an expert at trial or by deposition; and a statement of the compensation to be paid for his study and testimony in the case. (Doc. 71 at 4). Defendants argue that because plaintiff failed to timely produce an expert report that complied with Rule 26(a)(2)(B), Mr. Baggett cannot testify as an expert in this matter and plaintiff is precluded from using Mr. Baggett's report pursuant to

Fed. R. Civ. P. 26(a) and 37(c)(1).[2] (*Id.* at 3). Defendants acknowledge that plaintiff eventually

filed a revised expert report on March 16, 2015. (*Id.* at 4, citing Doc. 65). However, they argue

the disclosure was untimely. Defendants note that plaintiff filed the revised report almost six

months after the September 26, 2014 deadline for the disclosure of expert witnesses without

filing a motion to modify the Scheduling Order under Fed. R. Civ. P. 16(b)(4) (allowing a party

to request modification of a Scheduling Order for good cause). Defendants argue that plaintiff

was not diligent and he does not have good cause for his delay in filing an expert report that

satisfies Rule 26(a)(2)(B). (*Id.* at 4).

 In response, plaintiff alleges that he timely identified Mr. Baggett as an expert witness

when he filed the complaint on March 19, 2014 (Doc. 4); he filed Mr. Baggett's forensic report

on June 30, 2014 (Doc. 22); he filed Mr. Baggett's report with his initial disclosures on July 28,

2014, as Exhibit XI[3] (Doc. 27); and he filed Mr. Baggett's forensic report on September 10, 2014

(Doc. 38), prior to the September 26, 2014 deadline established in the Court's Scheduling Order.

(Doc. 73). Plaintiff alleges that defendants have been aware since June 2014 of the expert's

identity, the opinions he would provide and the bases for those opinions, the facts or data

considered by the expert in forming his opinions, any exhibits to be used to summarize or

support his opinion, and the witness's qualifications, including a list of all publications authored

in the preceding ten years. (*Id.* at 3). Plaintiff alleges that he was not aware that defendants had

any objections to the sufficiency of the expert report until February 2015. (*Id.* at 2). Plaintiff

acknowledges that certain information that must be included in an expert report pursuant to Rule

---

[2] Rule 26(a) sets forth the initial disclosures a party is required to make, including the identity of any witness the party may use to present evidence under Rule 702. Rule 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard" may impose other appropriate sanctions listed under the Rule.

[3] There are no exhibits attached to the initial disclosures filed with the Court.

26 was omitted from the report. (*Id*. at 2-3). However, plaintiff contends that he supplemented the report with all required information on March 16, 2015. (Doc. 38). Plaintiff alleges that defendants have not been prejudiced by the omissions from the supplemental report because defendants had all of the information required under Rule 26(a)(2)(B) for approximately ten weeks before they filed the motion to exclude, and a trial date has not yet been set. (*Id*.).

In their reply brief, defendants allege that plaintiff had notice that his expert report was deficient well before March 2015. (Doc. 84 at 1-2). Defendants further allege that the supplemental report, which plaintiff submitted six months after the expert disclosure deadline set by the Court, fails to cure the defects in the original report. (*Id*. at 2).

### ii. *The governing standards*

A party is not permitted to use information or a witness that the party failed to disclose as required by Rule 26(a) or (e) "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). *See also Grain v. Trinity Health*, 431 F. App'x 434, 445 (6th Cir. 2011) ("where a party fails to designate a witness as required by a pre-trial order, the witness may not be used unless the failure to comply 'was substantially justified or harmless'") (citing Fed. R. Civ. P. 37(c)(1)); *Roberts ex rel. Johnson v. Galen of Virginia, Inc.,* 325 F.3d 776, 782 (6th Cir. 2003) (citations omitted) (same). The advisory committee note to Rule 37 "strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Borg v. Chase Manhattan Bank U.S.A.,* 247 F. App'x 627, 637 (6th Cir. 2007) (citation omitted) (failure to disclose not harmless where defendant was unaware of plaintiff's intent to supply expert testimony and of expert's identification before plaintiffs filed a response to defendant's motion for summary judgment). Minor omissions from the expert report, such as a failure to disclose the expert's compensation, do not justify striking

the evidence in light of the minor harm caused to the opposing party. *R.C. Olmstead, Inc. v. CU Interface, LLC,* 657 F. Supp.2d 905, 908-09 (N.D. Ohio 2008), *aff'd,* 606 F.3d 262 (6th Cir. 2010) (citing *Walbridge Aldinger Co. v. Aon Risk Servs., Inc. of Pennsylvania,* No. 06-cv-11161-DT, 2007 WL 1219036, at *1 (E.D. Mich. Apr. 25, 2007)).

Rule 16 grants a district court wide discretion to impose sanctions for a party's failure to comply with its scheduling orders. *Clarksville-Montgomery County School System v. United States Gypsum Co.,* 925 F.2d 993, 998 (6th Cir. 1991) (citing Fed. R. Civ. P. 16). This includes the discretion to exclude expert witness testimony which has not been timely disclosed. *Pride v. BIC Corp.,* 218 F.3d 566, 578-79 (6th Cir. 2000) (citation omitted) (district courts have "broad discretion" to exclude expert testimony that is not timely disclosed).

### iii. The expert report should not be excluded on timeliness grounds.

The Court finds that exclusion of plaintiff's handwriting expert and the expert report are not warranted under either Rule 37(c)(1) or Rule 16(b)(4). Defendants acknowledge that plaintiff timely identified Mr. Baggett as his handwriting expert prior to expiration of the September 26, 2014 deadline established in the Court's July 18, 2014 Scheduling Order. (Doc. 25). Further, defendants do not dispute that plaintiff filed an expert report prior to expiration of the deadline. (Docs. 22, 38). Defendants were thus on notice of the identity of plaintiff's expert, the opinion he would render, and his credentials.

Even assuming plaintiff failed to timely disclose his expert report prior to the deadline established by the Court, exclusion of the expert testimony and report would not be warranted pursuant to Rule 37(c)(1) or 16(b)(4) under the circumstances presented here. Plaintiff's expert report filed in September 2014 did not fully comply with Fed. R. Civ. P. 26(a)(2)(B). (Doc. 38). However, the report gave defendants notice of the identity of plaintiff's expert, the opinion he

would render, and his credentials. Plaintiff filed a supplement to the expert report on March 16, 2015, which included a more detailed basis for the expert's opinion and the compensation he was to be paid. (Doc. 65). Though plaintiff filed the supplemental report six months past the deadline for disclosure of experts, defendants do not allege that they have been harmed by plaintiff's delay in supplementing the expert report. Plaintiff produced the supplemental report before the discovery deadline had passed, more than two months before expiration of the dispositive motion deadline, and over six months prior to the tentatively scheduled trial date. (Doc. 55). Thus, defendants were well aware of the contents of the report in ample time to conduct discovery on the report and to address the report in their motion for summary judgment.

For these reasons, exclusion of plaintiff's handwriting expert and the expert report is not warranted under either Rule 37(c)(1) or Rule 16(b)(4) on the ground plaintiff failed to timely produce the report in compliance with the Court's Scheduling Order. The better course is to determine whether the expert report complies with Rule 26(a)(2)(B) and whether Mr. Baggett qualifies as an expert under Fed. R. Evid. 702 and *Daubert* standards.

### C. Compliance with the requirements of Fed. R. Civ. P. 26(a)(2)(B)

Defendants argue that even if the Court concludes that plaintiff's expert report was timely submitted, the report should nonetheless be excluded from evidence because it fails to comply with Rule 26(a)(2)(B). (Doc. 71 at 5). Defendants argue that the "scant one page report" provides only a "bottom line" and fails to identify the reasons for the expert's opinions or any basis for his conclusions. (*Id*. at 5-6, citing Doc. 65).

"Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *R.C. Olmstead, Inc.,* 606 F.3d at 271 (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir. 1998) (citing *Sylla-Sawdon v.*

*Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995)). Here, the expert report produced

by plaintiff consists of more than one page and offers more than the simple conclusion that

plaintiff's signature was forged on the documents in question. In the report, Mr. Baggett has

provided samples of signatures he compared and he lists differences between signatures which

are challenged as forgeries and signatures that he identifies as authentic signatures of plaintiff.

Thus, Mr. Baggett's report should not be dismissed on the ground it provides only a "bottom

line." Instead, a more in-depth inquiry is necessary to ascertain whether the opinions offered by

Mr. Baggett satisfy the evidentiary standards of Rule 702 and *Daubert*.

  **D. Mr. Baggett's testimony and expert report should be excluded under Rule 702 and *Daubert*.**

  Plaintiff's expert report should nonetheless be excluded for failure to satisfy the

requirements of Fed. R. Evid. 702 and *Daubert*. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court has a "gatekeeping role" to screen expert testimony and

judges have discretion to determine whether such testimony is admissible, depending on its

reliability and relevance. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999);

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). *See also Newell Rubbermaid,*

*Inc. v. The Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). "[T]he law grants the [court]

broad latitude" in analyzing and determining the reliability of proffered expert witness

testimony. *Kumho*, 526 U.S. at 139, 142. "The inquiry [under Rule 702] is a flexible one[,]" and

its focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-95. Rule 702 applies not only to scientific testimony but also to other types of expert testimony based on technical or other specialized knowledge. *See Kumho*, 526 U.S. at 147; *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 332 (6th Cir. 2001) (applying *Kumho* to expert witness whose expertise arose largely from 40 years of practical experience in the banking industry). The burden is on the party proffering the evidence to show that the expert arrived at his conclusion "in a scientifically sound and methodologically reliable fashion." *In re Welding Fume Products*, No. 1:03-cv-17000, 2005 WL 1868046, at *4 (N.D. Ohio Aug. 8, 2005) (citing *Ruiz-Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)).

Defendants allege that Mr. Baggett is not qualified as an expert under Fed. R. Evid. 702. (Doc. 71). They acknowledge that handwriting analysis may be considered a field of expertise under Rule 702, but they note the admissibility of expert testimony in a given case depends on the expert witness's training, job duties, years of practical experience, and the detailed nature of his proposed testimony. (*Id*. at 7, citing *U.S. v. Jones*, 107 F.3d 1147, 1160-61 (6th Cir. 1997) (district court did not abuse its discretion by admitting handwriting expert's testimony given his training experiences, job responsibilities, years of practical experience, and detailed nature of his testimony)). They also allege that numerous federal courts have determined that Mr. Baggett does not have sufficient experience to serve as a handwriting expert. (*Id*. at 7-9 and Doc. 84 at 3-5, citing cases). Defendants contend that assuming, *arguendo*, Mr. Baggett's experience is adequate to qualify him as an expert, his methodology is not reliable because (1) he has not identified any tools, principles or techniques he used, and (2) he has not articulated how he applied a methodology to the facts of this case. (*Id*. at 9).

14

In response, plaintiff correctly notes that "[c]ourts have long received handwriting analysis testimony as admissible evidence." (Doc. 73 at 5, citing *United States v. Paul*, 175 F.3d 906, 910, n. 2 (11th Cir. 1999) (citing *Jones*, 107 F.3d at 1160-61; *United States v. Velasquez,* 64 F.3d 844, 848-50 (3rd Cir. 1995)). Plaintiff acknowledges that Mr. Baggett has been excluded as an expert in a handful of cases, but plaintiff alleges over 100 courts have accepted Mr. Baggett as a handwriting expert over the last 8 years. (*Id*.). Plaintiff contends that in those few cases where Mr. Baggett has been excluded as an expert, testimony or supplemental affidavits that would have further detailed his qualifications were not proffered. (*Id*. at 5-6). Plaintiff contends that Mr. Baggett clearly qualifies as an expert by knowledge, skill, experience, training or education in the area of handwriting comparison analysis in light of the following experience:

- He was Dean of the "Handwriting University" or "Forensic Document Examination School" for over five years.
- He is a certified member of the American College of Forensic Examiners International, which is "recognized by the Florida Bar as a Provider of CLE to attorneys"; the National Questioned Document Association; the World Federation of Handwriting Experts; the Texas Police Association, the Sheriffs Association of Texas, and the Center of Forensic Profiling.
- He regularly attends continuing education in the area of questioned document examination.
- He routinely lectures and instructs other questioned document examiners at peer attended seminars in the area of questioned document examination.
- He has taught and trained numerous new questioned document examiners, many of whom are currently employed in the field as forensic questioned document examiners.
- He has authored several papers and books which have been published or presented for peer review.
- He has been engaged in the private practice of forensic examination of questioned documents for over 30 years.
- He has participated in over 6,000 cases and examined documents and/or testified in court cases as a handwriting expert in every state and over a dozen foreign countries.

(*Id*. at 6-7).

Plaintiff further alleges that the second expert report sets forth Mr. Baggett's methodology. (*Id*. at 7, citing Doc. 65). Plaintiff alleges that Mr. Baggett uses the "ACE-V" methodology, a methodology commonly utilized by government agencies and others in the field of forensic questioned document examination[4], first, to analyze the handwriting; second, to compare the handwriting; third, to evaluate the handwriting; fourth, to verify the correctness of the observations made; and fifth, to verify the observations by peer review. (*Id*. at 7-8). Plaintiff alleges that the signatures are examined based upon the uniqueness of handwriting patterns exhibited by individuals, including letter design, stroke placement, slant, spacing, and size. (*Id*. at 8). Plaintiff alleges that Mr. Baggett's testimony appears to be relevant and reliable and would assist the trier of fact in understanding the evidence. (*Id*. at 9).

The Court has carefully reviewed the parties' arguments, Mr. Baggett's first and second expert reports, the governing case law, and decisions from other federal courts addressing Mr. Baggett's qualifications to testify as a handwriting expert. The Court concludes that Mr. Baggett's testimony and expert report concerning the authenticity of plaintiff's signature on the purportedly forged documents at issue in this case should be excluded for the reasons discussed below.

### i. Mr. Baggett's qualifications

The Court finds that Mr. Baggett is not qualified by skill, experience, training or education as a handwriting expert to offer an opinion concerning the authenticity of plaintiff's signature on the 2004 loan documents at issue in this case. Initially, the information provided in Mr. Baggett's expert report raises questions about the depth of Mr. Baggett's experience and whether the expert report accurately reflects Mr. Baggett's credentials. Mr. Baggett lists nearly

---

[4] "ACE-V is an acronym for analysis, comparison, evaluation, and verification." *United States v. Watkins*, 450 F. App'x 511, 513 (6th Cir. 2011).

100 "cases and or cities" in which he has been "qualified or appointed and or accepted by a State or by the Court as an Expert and/or [has] testified in trial or by deposition from 2009-2014." (Doc. 65 at 22). However, the Court is unable to corroborate Mr. Baggett's representation and to evaluate the nature of his experience based on the information he has provided. For several of the matters listed, Mr. Baggett has omitted relevant information such as the court or case number. Further, the record in at least some of the federal cases listed by Mr. Baggett does not reflect that the court assessed his expert credentials and qualified Mr. Baggett as an expert. For example, the Court in *Ahmed A. Al-Aissa v. Sears, Roebuck & Co.*, No. 1:13-cv-90-SEH (D. Montana), denied the defendant's motion to exclude Mr. Baggett's expert handwriting testimony without prejudice to renewal if (1) Mr. Baggett did not file a revised expert report that fully complied with Rule 26(a)(2), and (2) the plaintiff did not make Mr. Baggett available for deposition. *Al-Aissa,* No. 1:13-cv-90-SEH, Doc. 56. The case was settled several months later and was dismissed. *Id.*, Docs. 97, 99. The docket sheet does not reflect that the Court conducted a *Daubert* hearing or otherwise assessed Mr. Baggett's credentials. In another case, *Torello v. BAC Home Loans Servicing, LP, Inc.*, *et al.*, No. 3:11-cv-00948-G (N.D. Tex.), there is no indication in the record that the Court considered Mr. Baggett's qualifications before granting the defendants' unopposed motion for summary judgment and entering judgment in the defendants' favor. *Torello*, No. 3:11-cv-00948-G, Docs. 37, 38.

The Court also has serious concerns regarding the accuracy of Mr. Baggett's representations in the background information he has provided as to the number of cases he has completed and his years of experience. In the background information submitted on September 10, 2014, as part of Exhibit XI, Mr. Baggett represented that he has "completed over 3,500 cases" and has "analyzed handwriting for over 30 years." (Doc. 38 at 4). In the background

information submitted just six months later on March 16, 2015, Mr. Baggett represented that he

has "completed over 5,000 cases" and has "analyzed handwriting for over 40 years." (Doc. 65 at

5). That expert report also lists just under 100 cases for the 2009-2014 time period in which Mr.

Baggett qualified as an expert or gave deposition or trial testimony. (*Id*. at 22-33). This number

is nearly double the figure from less than two years earlier, when another court from the Sixth

Circuit noted that Mr. Baggett claimed he had been "qualified and/or appointed as an expert and

[had] testified or offered deposition testimony in over fifty cases between 2005 and 2012."

*United States v. Revels*, No. 1:10-CR-110-1, 2012 U.S. Dist. LEXIS 65069 (E.D. Tenn. May 9,

2012) (Doc. 444 at 9). The wide discrepancies in these numbers, coupled with indications that

Mr. Baggett may have exaggerated the depth of his experience, raise serious concerns as to

whether Mr. Baggett's expert report accurately reflects his qualifications.

     In addition to concerns as to whether Mr. Baggett has accurately represented his

credentials, the Court notes that plaintiff has not directed this Court to any other federal court

decision that has found Mr. Baggett to be qualified as an expert after performing a *Daubert*

analysis and/or considering his qualifications under Rule 702. On the other hand, defendants

have cited several federal cases in which the court analyzed Mr. Baggett's qualifications and

held that Mr. Baggett was not qualified to testify as a handwriting expert or that his testimony

should be excluded as unreliable. *See Dracz v. Am. Gen. Life Ins. Co*., 426 F. Supp.2d 1373

(M.D. Ga. 2006), *aff'd*, 201 F. App'x 681 (11th Cir. 2006); *Revels*, No. 1:10-CR-110-1; *Routh v.

Bank of Am, N.A.,* No. 5:12-cv-244-XR (W.D. Tex. Apr. 7, 2013) (Doc. 41). *See also Wheeler v.

Olympia Sports Center, Inc*., No. 03-265-P-H, 2004 WL 2287759 (D. Me. Oct. 12, 2004). The

Court's in-depth findings in *Revels* are particularly instructive.

The District Court in *Revels* conducted a two-day voir dire hearing following which it excluded Mr. Baggett's testimony, finding he was not qualified to testify as an opinion witness in the areas of document examination and handwriting analysis.[5]  *Revels*, No. 1:10-CR-110-1, Doc. 444.  The Court summarized the following credentials as set forth in Mr. Baggett's curriculum vitae, which are included for the most part in Mr. Baggett's current curriculum vitae submitted in this case:

> Mr. Baggett received a B.A. and M.Ed[.] at McNeese State University, which is located in Lake Charles, Louisiana, and performed some post graduate work at the University of Houston.  He avers he also received education and training at the U.S. Army Military Police Officer's School.  He participated in a two-year apprenticeship with Mr. Ray Walker, a handwriting expert and document examiner.  He also taught and, for a period of time, served as a dean at the School of Forensic Document Examination at Handwriting University, which is run by his son.  Mr. Baggett claims he has participated in several training sessions and conferences, the majority of which were conducted through Handwriting University.  Mr. Baggett further testified that he is a member of the American College of Forensic Examiners, the National Questioned Document Association, and the World Federation of Handwriting Experts.  Finally, he claims he has been qualified and/or appointed as an expert and has testified or offered deposition testimony in over fifty cases between 2005 and 2012.  Most recently, Mr. Baggett was accepted as an expert on February 9, 2012, in a case before the United States District Court for the Northern District of Texas.

*Id.* at 9-10.  The Court found that "[o]n the surface, Mr. Baggett's credentials are noteworthy" but a look below the surface "unearthed a rather different picture."  *Id.* at 10.  The Court found that the government in the case had "whittled away at Mr. Baggett's qualifications, beginning with his training and experience," and had exposed the following weaknesses and gaps in these areas:

> Mr. Baggett admitted that his undergraduate and graduate studies were of no particular relevance to his training as a document examiner, and that he could not recall whether his Military Police Officer's School training addressed forensic

---

[5] Because *Revels* was a criminal sentencing hearing, the Court was not bound by Rule 702 and *Daubert*.  *Revels*, No. 1:10-CR-110-1, Doc. 444 at 6.  The Court's primary focus was instead on whether Mr. Baggett's opinion testimony could satisfy a "minimum-indicia-of-reliability standard."  *Id.* at 6.  The Court nonetheless looked to Rule 702, *Daubert* and related case law for insight on assessing the reliability of an opinion witness's testimony.  *Id.*

document examination techniques. [Although] willing to accept Defendant's proffer of a statement made by the American Board of Forensic Document Examiners ("ABFDE") that '[l]ike most forensic disciplines, on-the-job specialized training from experienced examiners is the only way to acquire expertise,' . . . Mr. Baggett's 'on-the-job' training for two years under Mr. Walker is questionable given concerns that were raised about Walker's qualifications and credibility. In a case predating *Daubert* but occurring after Mr. Baggett was trained under Walker, the Fifth Circuit affirmed a district court decision not to qualify Walker as a handwriting expert. *United States v. Burgeois*, 950 F.2d 980, 986-87 (5th Cir. 1992) . . . From this questionable training experience, Mr. Baggett proceeded to start Handwriting University with his son, and then both taught and later received continuing education at Handwriting University.

. . . . The only professional organization in the field of document examination that offers certification is the ABFDE. Neither Mr. Baggett nor his mentor Ray Walker is an ABFDE member. Although Mr. Baggett testifies that he is a member of three other professional organizations, his membership in those groups reveals very little about his training or credentials given that the organizations do not have a certification process or require proficiency testing. Instead, as discussed at the hearing, to become a member one need only complete an application, pay a fee, and, in the case of one organization, complete an ethics exam.

Finally, of particular concern to this Court, is the fact that several other courts have determined, inter alia, Mr. Baggett is not qualified to testify. For example, in [*Dracz*, 426 F. Supp.2d 1373, a district court] . . . determined Mr. Baggett was not qualified to testify as an opinion witness. Among other things, the court concluded Mr. Baggett's qualifications were 'clearly paltry in comparison' to other document examiners whose testimony had been admitted in the same district and circuit. The court observed that Mr. Baggett, at the time, was not certified by the ABFDE or a member of any of the twenty nationally recognized document examiner trade organizations, had not subjected himself to any sort of proficiency tests or regular peer review, had never authored an authoritative text in his field, had never received training in notable government training programs, and had never taught in a recognized program for his field. *Id*. at 1378-1379. Instead, the court observed, '[a]t most, the evidence shows that Mr. Baggett received the vast majority of his training in this field not from a recognized or accredited program but from Dr. Ray Walker, whose own qualifications as a document examiner are suspect; that he has worked as a document examiner based on this training for twenty-two years; and that he had a one- or two-year stint examining checks for forgeries as a consultant to the Dallas, Texas Justice of the Peace Court and the Dallas County District Attorney's Office.

*Id*. at 10-12.

The *Revels* Court examined another case where the state court had made detailed findings and determined Mr. Baggett was not qualified to offer testimony as a forensic document examiner based on his lack of formal training, a failure to show that the apprenticeship with Ray Walker had entailed any meaningful instruction, the fact that he had never been certified as a forensic document examiner, and the fact that he lacked any meaningful education and training in the field. *Id*. at 12 (citing *Blake v. W. Va. Nat'l Auto Ins. Co*., No. 06-C-71 (Upshur Cnty. Cir. Ct. W. Va. Sept. 5, 2007)). The Court concluded as follows:

> Since *Blake*, Mr. Baggett has taken steps to improve upon his credentials. In particular, Mr. Baggett is a member of three professional associations and he claims his work in this case was peer reviewed by Ms. Wendy Carlson. The Court also does not discount the fact that Mr. Baggett has been allowed to testify personally or through deposition at other trials in both state and federal court. However, viewing Mr. Baggett's record as a whole, this Court can find no meaningful distinction between his qualifications in 2006 and today that would convince this Court to veer from the conclusions drawn in *Dracz* and *Blake* that Mr. Baggett is not qualified to testify. Even under a "minimum indicia-of-reliability standard," this Court concludes that the issues raised with respect to Mr. Baggett's qualifications call into doubt the reliability of any testimony that he would offer. Accordingly, Mr. Baggett will not be allowed to testify at Defendant's sentencing as an expert.

*Id*. at 12.

This Court shares the *Revels* Court's serious concerns regarding Mr. Baggett's qualifications which led that Court to exclude Mr. Baggett's testimony. Mr. Baggett represents that he has received "education and training in document examination and psychology" (Doc. 65 at 5); however, Mr. Baggett conceded in *Revels* that his post-secondary education is of "no particular relevance" to his document examination training. *Revels*, No. 1:10-CR-110-1, Doc. 444 at 10. Mr. Baggett states that he formerly served as the Dean of the School of Forensic Document Examination at Handwriting University (Doc. 65 at 5), which the Court in *Revels* noted is a school started by Mr. Baggett's son. *Revels*, No. 1:10-CR-110-1, Doc. 444 at 9.

However, it is not known whether the school has undergone any type of accreditation process. Mr. Baggett asserts he underwent a two-year apprenticeship with Dr. Ray Walker, that Dr. Walker's qualifications have been affirmed in an unnamed case by a Texas court, and that Dr. Walker has "had historical rulings in his favor." (Doc. 65 at 5). This information is of little assistance to the Court given that Mr. Baggett does not identify the rulings he generally references that have favored Dr. Walker, there is no indication in the record that Dr. Walker is a member of the ABFDE or that he has been certified by a similar organization, and at least one court has found Dr. Walker's credentials to be "suspect." *Revels*, No. 1:10-CR-110-1, Doc. 444 at 11 (citing *Dracz*, 426 F. Supp.2d at 1373).

Mr. Baggett's most recent curriculum vitae submitted in this case lists numerous lectures, classes, and conferences in which Mr. Baggett has participated as either an instructor or an attendee between 2004 and 2013. (Doc. 65 at 6-7). However, the vast majority of these sessions were presented by the School of Forensic Document Examination at Handwriting University, the school started by Mr. Baggett's son with which Mr. Baggett was associated. Given Mr. Baggett's close connections to the school and a lack of information about the school's credentials, Mr. Baggett's participation in sessions presented by the school sheds little light on his qualifications. Mr. Baggett's certifications and "Past and Present Memberships" likewise do little to convince the Court that Mr. Baggett is qualified by experience to offer an opinion as a handwriting expert. (Doc. 65 at 5, 6-7). Mr. Baggett's curriculum vitae indicates that he has a certificate from the American Bureau of Document Examiners and a "certificate of completion" from the American Institute of Applied Science, but there is no information provided about these entities and no indication Mr. Baggett is certified by the ABFDE. (*Id*. at 5). Moreover, although Mr. Baggett has listed five published articles and books he has authored, he does not denote

which of the publications is a book and which is an article; he does not identify the publisher; he does not provide a date of publication; and he does not state whether the publications were peer-reviewed. (Doc. 65 at 7).

For these reasons, this Court agrees with those courts that have found Mr. Baggett is not qualified to testify as a handwriting expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The requirement that an opinion witness have specialized knowledge to give an opinion "has always been treated liberally." *United States v. Pollard*, 128 F. Supp.2d 1104, 1120 (E.D. Tenn. 2001) (citing *In re: Paoli RR Yard PCB Litigation,* 916 F.2d 829, 855 (3rd Cir. 1990)). Nonetheless, the "liberal interpretation of this phrase does not mean that a witness is an expert simply because he claims to be." *Id*. The record before the Court does not demonstrate Mr. Baggett is qualified as a handwriting expert. Mr. Baggett's testimony should be excluded on this basis.

### ii. *The methodology employed*

Even if the Court were to find Mr. Baggett is qualified as an expert in the field of handwriting analysis, Mr. Baggett's testimony should be excluded on the ground his methodology is not reliable. In order for an expert's testimony to be admitted, the proffered expert must be qualified to render a *reliable* opinion based on sufficient facts or data and the application of accepted methodologies. *Kumho Tire Co.,* 526 U.S. at 152. Factors a court may consider in assessing the reliability of evidence are: (1) whether the technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operations; and (5) "general acceptance" within the relevant scientific community. *Daubert,* 509 U.S. at 593-94; *Kumho Tire Co.,* 526 U.S. at 151. These specific factors do not necessarily apply

23

to all experts or in every case. *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (citing *Kumho Tire Co.,* 526 U.S. at 151). "In some cases (even cases involving non-scientific expert testimony), the factors may be pertinent, while in other cases 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *Id.* (citing *Kumho Tire Co.,* 526 U.S. at 150). "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* (citing *Kumho Tire Co.,* 526 U.S. at 153). Whatever factors the court chooses to consider in ascertaining reliability, "the focus must be solely on principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S. at 595.

Plaintiff has not directed the Court to any case in which the reviewing court found Mr. Baggett's methodology to be reliable. Conversely, defendants have cited a number of cases in which Mr. Baggett's methodology was deemed not reliable and he was excluded as an expert. These cases include: *Rodriguez v. U.S. Bank, N.A.,* No. SA-12-CV-345-XR, 2013 WL 3146844, at *5 (W.D. Tex. June 18, 2013) (Mr. Baggett's affidavit not admissible as evidence that document was forged under Rule 702 because he did not explain any reliable principles or methods on which his opinion was based); and *Brown v. Primerica Life Insurance Company,* No. 02 C 8175, 2006 WL 1155878, at *4 (N.D. Ill Apr. 29, 2006) (affidavit of Mr. Baggett stating he had compared documents with known signatures to document with questioned signatures and determined the questioned signatures were forged was inadmissible under Rule 702; there was no indication that Mr. Baggett "applied any specialized knowledge or skills to the task he was asked to perform."). The same outcome is warranted here. The second expert report proffered by plaintiff in this case (Doc. 65) appears to provide more detail than the reports that were excluded from evidence in the above cases. Nonetheless, the methodology described by Mr.

Baggett in the second expert report is much too vague and lacks sufficient indicia of reliability to be deemed admissible.

In the second expert report, Mr. Baggett states that he was asked to examine "questioned signatures" of plaintiff and determine their authenticity by comparing them to "known" signatures. (Doc. 65 at 14). Mr. Baggett described the methodology he used as follows: He received documents via the internet that contained six known signatures of plaintiff (Exhs. K1-K6) and documents that contained questioned signatures of plaintiff (Exhs. Q1-Q6). (Doc. 65 at 14). He printed the documents on an "HP printer" and compared the "known samples of the initials and signatures" to verify that they were authored by the same person and to determine "the natural variation in the regular normal design of signatures and initials." (*Id*.). "The patterns of writing were verified under the microscope and by using other scientific instruments such as metric measuring devices, light table, and handheld magnifying devices." (*Id*.). He then enlarged the questioned signatures and compared them side-by-side to the known samples on a "light table" and under a microscope. (*Id*.). In addition to using the "unaided eye," he employed all of the following tools in making the side-by-side comparison: "handheld magnifying loupes, microscope, photocopy enlargements, grids, a light table, and metric measuring devices." (*Id*. at 15). Mr. Baggett "measured letter height, lateral expansion, angles, and slant to verify authorship," and he examined "line quality" under a microscope. (*Id*.). He used the "scientific methodology" known as the "ACE" method, which means "Analyze, Compare, Evaluate."[6] (*Id*.). Mr. Baggett stated that he "adds the Peer Review methodology, which requests a second independent examination by a qualified handwriting expert." (*Id*.). He alleges that "[t]he State

---

[6] Mr. Baggett stated this is the method government agencies such as the FBI and the United States Postal Service "reportedly" use in their questioned document laboratories and that "ASTM" recommends this as the standard method in the field. (*Id*.).

and Federal Court qualified expert [he] selected to peer review this case confirmed [his] opinion." (*Id.*).

Mr. Baggett states that his testing yielded the following results: "The questioned signatures, when compared to the known signatures and initials[7], displayed dissimilar line quality, shakiness, malformed letters and errant positions of letters and slants." (Doc. 65 at 15). The questioned signatures had "significant abnormal variations present between the letters, angles, and connecting strokes when compared to the known signatures." (*Id.*). "Indications of forgery were noted on the questioned signature in the line quality, letter distortion, and shaky starts and stops." (*Id.*). "[T]he measureable distinctions of each letter, pattern, angle, and slant, and the results of my tests indicate that a different person was the author of the signatures on the questioned documents." (*Id.* at 16). Mr. Baggett provided the following list of "Differences of the Questioned Signatures of Kalemba Balimunkwe when compared to the known signature of Kalemba Balimunkwe":

1. Signatures are smaller in height
2. Signatures are smaller in length
3. On Question 2 the k in Kalemba is formed with 3 strokes
4. Question 4 has a distorted K.
5. Shakiness in handwriting
6. The dot over the small I's in Balimunkwe are located in almost the same location.
7. K did not have a loop at the top.
8. The initial B is added to all the questioned signatures.
9. The B in "Q6" and "Q5" extend into the B of Balimunkwe.
10. "Q1" has a different loop in the B.
11. The e's in Balimunkwe start and stop in the same place.
12. The spacing between W and E are different.
13. The B's are distorted.
14. The loop in the A is similar in all of Balimunkwe.
15. The A varies.
16. No open space between B and A.

(*Id.* at 19).

---

[7] It is not clear what Mr. Baggett is referring to here as there are no initials in the "known" signatures.

Mr. Baggett has failed to demonstrate that he arrived at his conclusions "in a scientifically sound and methodologically reliable fashion" for a number of reasons. *See In re Welding Fume Products*, No. 1:03-cv-17000, 2005 WL 1868046, at *4. First, Mr. Baggett accepted plaintiff's representations as to which signatures were authentic and which signatures were purportedly authored by another individual. Mr. Baggett does not allege that he took any steps to verify that the signatures plaintiff represented to be his own were actually authored by plaintiff.

Second, Mr. Baggett states in his expert report that he requested original documents, which were not available, and he "would like to examine originals if possible to verify [his] opinion." (Doc. 65 at 14). Thus, it is questionable whether Mr. Baggett had all of the information he required to conduct a proper analysis.

Third, it is evident from Mr. Baggett's report that the standards he employed are "extremely discretionary," which undermines the reliability of his analysis. *See United States v. Johnsted*, 30 F. Supp.3d 814, 815-22 (W.D. Wis. 2013). Mr. Baggett alleges that he compared the "known samples of the signatures and initials" to determine "the natural variation in the regular normal design of signatures and initials."[8] (Doc. 65 at 14). Mr. Baggett states that the "patterns of writing were verified under the microscope and by using other scientific instruments such as metric measuring devices, light table, and handheld magnifying devices." (*Id.*). However, Mr. Baggett does not explain *how* he used these various instruments to compare the samples and verify patterns. (*Id.*). Nor does Mr. Baggett identify the "patterns" he verified in the known signatures. Mr. Baggett states in his report that as a general rule, the "identification of any signature/handwriting is based on the agreement, without unexplainable difference, of the

---

[8] Because no initials appear in the known signatures, Mr. Baggett's reference to initials suggests this is boilerplate language.

handwriting characteristics displayed." (*Id.*). He states that these characteristics include "the form of the letters, the beginning, connecting and ending strokes, the proportions of letters, both inter-letter and intra-letter, the slope, size, and curvature of the writing/printing, the spacing and arrangement, the skill of the writer, [] line quality[,] alignment, positioning and outstanding significant features[.]" (*Id.*). Although he notes these characteristics, Mr. Baggett does not identify any such handwriting characteristics in the known signatures. (*Id.*). He simply makes the broad assertion that "[t]he handwriting characteristics displayed in the known initials [which do not appear in the samples Mr. Baggett reviewed] and signatures are all very similar." (*Id.*). Because Mr. Baggett's report does not explain the similarities in the known signatures in any detail and does not describe the methodology he used to reach his conclusion concerning patterns in those signatures, his conclusion is not reliable in this respect.

Fourth, Mr. Baggett's report does not adequately explain the methodology he applied to compare the known signatures with the questioned signatures. The report vaguely states that "[m]easurements" of various aspects of the writing were taken and "line quality" was examined under a microscope. (*Id.* at 15). He asserts that a comparison of the questioned signatures to the known signatures showed "[s]ignificant dissimilarities." (*Id.* at 15). However, Mr. Baggett does not explain in sufficient detail either the results his comparison yielded or the significance of those results so as to allow the Court to accept his opinion as reliable. Mr. Baggett does not define "line quality" or describe the differences in "line quality" he observed; he does not explain what he means by dissimilarities in "shakiness"; he does not identify the specific letters that are "malformed"; and he does not explain the meaning of letter positions and slants or identify where these appear in the signatures. The list of dissimilarities set forth in the report does not remedy the problem by supplying the necessary detail. For instance, Mr. Baggett lists:

"5. Shakiness in handwriting"; "12. The spacing between W and E are different"; and "14. The loop in the A is similar in all of Balimunkwe." (*Id*. at 19). These phrases are so vague as to be virtually meaningless. For these reasons, neither Mr. Baggett's method for comparing the handwriting characteristics of the known signatures with the questioned signatures nor the results he reached are reliable.

Fifth, although plaintiff alleges that Mr. Baggett utilized the "ACE-V" methodology (Doc. 73 at 7), Mr. Baggett's report does not bear out his contention. Mr. Baggett explained in the March 2015 report that he used the "ACE" method. (Doc. 65 at 15). He explained this means "Analyze, Compare and Evaluate." (*Id*.). Mr. Baggett indicates that he added a "verification" step by having another handwriting expert conduct a "second independent examination." (*Id*.). However, Mr. Baggett does not name the other handwriting expert, he does not state what type of examination this individual performed, and he does not assert how the individual conveyed his or her opinion to Mr. Baggett. Accordingly, there is not an adequate basis for accepting Mr. Baggett's claim that he verified his results.

Thus, after a thorough review of Mr. Baggett's report, it is apparent that this case is "sorely lacking" in evidence regarding Mr. Baggett's methodology or the reliability of his methods. *See Dracz*, 426 F. Supp.2d at 1379. Mr. Baggett's report is deficient for reasons similar to those noted by the Court in *Dracz*:

> Noticeably absent from [Mr. Baggett's] "methodology" is any detailed explanation as to exactly *how* Mr. Baggett evaluated the documents and drew his conclusions regarding authorship and sequence. When asked during his deposition what methodology he used to determine authorship, Mr. Baggett testified that "There is no scientific methodology. It's a misnomer. There's not a scientific method in the sense of being a formal procedure. There is an analysis based upon the study of handwriting marks, including their length and width, the document, and sequence." Baggett Dep. 126. Mr. Baggett did testify in his deposition essentially that he blew up the documents and compared the writing to determine authorship, but he did not explain how he accomplished the

> comparison. There is nothing in the record to allow the Court to conclude, based on Mr. Baggett's vague and cursory explanation, that the techniques employed in his comparison are techniques that are generally accepted in the field, can be tested or subjected to peer review, are subject to standards or have an acceptable known or potential rate of error.

*Id*. at 1380. Here, Mr. Baggett has not explained his methodology, and there is no evidence that "other document examiners employed the same methodology, that the methodology has been subject to peer review through published journals in the field, and that the methodology's accuracy had been tested[.]" *Id*. (distinguishing *United States v. Mooney*, 315 F.3d 54, 62 (1st Cir. 2002) (upholding the trial court's decision to admit a handwriting expert's testimony)). Mr. Baggett's testimony should be excluded on the ground his methodology is not reliable.

### E. Conclusion

The Court concludes upon consideration of the relevant evidence that Mr. Baggett does not qualify as a handwriting expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Further, his methodology is not reliable under the standards set forth in *Daubert.* Mr. Baggett's expert report describes a vague and highly subjective method of handwriting comparison with no apparent safeguards against human error. There is simply no indication that his testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. 589. Mr. Baggett should not be permitted to testify as a handwriting expert in these proceedings.

### IT IS THEREFORE ORDERED THAT:

1. Plaintiff's motion for extension of time to complete the expert report (Doc. 72) is **DENIED**.

2. Defendants' motion to strike the supplement to the expert report (Doc. 80) is **GRANTED**. The supplement to the expert report (Doc. 74) is **STRICKEN** from the record.

3.  Plaintiff's motion for leave to file a response to defendants' motion to strike (Doc. 103) is **DENIED**.

4.  Defendants' motion to strike plaintiff's amended motion for summary judgment and plaintiff's supplemental memorandum in opposition to defendants' joint motion to exclude expert Curt Baggett (Doc. 97) is **GRANTED**.  Plaintiff's amended motion for summary judgment (Doc. 89) and plaintiff's supplemental memorandum in opposition to defendants' joint motion to exclude expert Curt Baggett (Doc. 90) are **STRICKEN** from the record.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Defendants' motion to exclude expert Curtis Baggett (Doc. 71) from future proceedings in this case be **GRANTED**.

2.  Plaintiff be granted ten days from the date the District Judge issues his ruling on this Report and Recommendation to respond to defendants' motions for summary judgment in accordance with the Order issued on June 3, 2015 (Doc. 88).

3.  Plaintiff's motion for a ruling on the motion to exclude expert Curtis Baggett (Doc. 104) be **DENIED** as moot.

Date: _9/3/15_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KALEMBA BALIMUNKWE,                          Civil Action No. 1:14-cv-327
        Plaintiff,                    Black, J.
                                             Litkovitz, M.J.

        vs.

BANK OF AMERICA, N.A.,
AS SUCCESSOR TO FIRST FRANKLIN
FINANCIAL CORP., et al.,
        Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.   Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in

accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).