**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KALEMBA BALIMUNKWE,
    Plaintiff,

    vs.

BANK OF AMERICA, N.A.,
AS SUCCESSOR TO FIRST FRANKLIN
FINANCIAL CORP., et al.,
        Defendants.

Civil Action No. 1:14-cv-327
Black, J.
Litkovitz, M.J.

**ORDER AND REPORT AND**
**RECOMMENDATION**

## I. Introduction

Plaintiff Kalemba Balimunkwe brings this pro se action against defendants Bank of America, N.A., as successor to First Franklin Financial Corporation (BOA), and Residential Credit Solutions, Inc. (RCS). The action was originally filed in the Hamilton County, Ohio Court of Common Pleas but was removed to the district court by defendant BOA on the basis of the Court's diversity jurisdiction. (Doc. 1). This matter is before the Court on the following motions: (1) plaintiff's motion for leave to obtain a new handwriting expert (Doc. 109) and plaintiff's motion to designate Wendy Carlson as his handwriting expert (Doc. 112), defendants' memorandum in opposition (Doc. 116), and plaintiff's reply memorandum (Doc. 120); (2) plaintiff's motion to amend his previous request to designate a new handwriting expert (Doc. 128) and plaintiff's amended request (Doc. 129), defendants' memorandum in opposition (Doc. 130), and plaintiff's reply in support of his motions (Doc. 131); (3) plaintiff's motion for review of the summary of events confirming the need for another handwriting expert (Doc. 123) and plaintiff's motion for a hearing on his request for review (Doc. 125), defendants' memorandum in opposition (Doc. 126), and plaintiff's reply in support of the motions (Doc. 127); (4) plaintiff's "Request for Leave of Court to Take Another Look at the [Mortgage] Signatures"

(Doc. 121) and plaintiff's "Motion for Another Look at the Signatures for Pursuit of Truth and Justice" (Doc. 122) and defendants' opposing memorandum (Doc. 124); (5) plaintiff's "Request for Leave of Court to Allow the Court to See This Truth" (Doc. 132), defendants' opposing memorandum (Doc. 133), and plaintiff's reply memorandum (Doc. 134); (6) plaintiff's motion for summary judgment (Doc. 82), defendants' memoranda in opposition to the motion (Docs. 92, 98), and plaintiff's motion for leave to file reply in support of the motion and plaintiff's reply memorandum (Docs. 102, 102-1); (7) defendant RCS's motion for summary judgment (Doc. 85), plaintiff's memorandum in opposition to RCS's motion (Doc. 111), and RCS's reply memorandum in support of the motion (Doc. 115); (8) defendant BOA's motion for summary judgment (Doc. 83), plaintiff's memorandum in opposition to the motion (Doc. 108), and defendant BOA's reply memorandum (Doc. 118); and (9) plaintiff's motion for an extension of time to file two supplemental affidavits in support of his claims (Doc. 86), defendant BOA's motion to strike the second supplemental affidavit (Doc. 96), plaintiff's motion for leave to file the two supplemental affidavits with any references to Curtis Baggett omitted (Doc. 110), and defendants' memorandum in opposition to plaintiff's motion to file the supplemental affidavits with references to Curtis Baggett excluded. (Doc. 117).

## II. Facts

The facts set forth below are undisputed except where noted.[1]

Plaintiff and his former wife Betty Balimunkwe obtained a mortgage loan in the amount of $47,000.00 on April 2, 1999 (original loan) for the purchase of a home at 931 Chateau Avenue

---

[1] In setting forth his version of the facts, plaintiff relies in part on an affidavit dated July 6, 2012, which he purports to be of record before the Court. Plaintiff does not indicate when the affidavit was filed with the Court or where in the record the affidavit is located. The Court has not been able to locate the affidavit in the record and therefore cannot accept as accurate or true plaintiff's representations as to statements made in the affidavit. There is an affidavit dated March 19, 2014, attached to the complaint, which the Court has considered in ascertaining the undisputed facts. (Doc. 4 at 19-22).

in Cincinnati, Ohio (Property). (Doc. 10, Exh. A). The mortgage agreement was signed by

plaintiff and Betty Balimunkwe. (*Id*.). First Franklin Financial Corporation (First Franklin) was

the lender. (*Id*.). The original loan was an open ended mortgage with a variable interest rate.

(Pltf. Aff., Doc. 4 at 19). The monthly mortgage payments varied between $640.00 and $680.00.

(*Id*.).

In September 2003, plaintiff and Betty Balimunkwe were granted a divorce in the

Hamilton County Court of Common Pleas. (Doc. 75, Exh. 2). An Agreed Entry was filed

pursuant to which plaintiff was awarded the Property. (*Id*.). The Agreed Entry states in part:

> 2. Husband shall be solely responsible for the mortgage on 931 Chateau held by
> Nationscredit, and all other debt associated with said real estate, and shall hold
> Wife harmless thereon. Husband shall use his best efforts to refinance this
> mortgage in order to remove Wife's name. Until such time, Husband shall pay
> the mortgage and real estate taxes in a timely fashion and take no action to injure
> Wife's credit with respect to the mortgage and property taxes.

(*Id*.).

There is documentation in the record showing that plaintiff subsequently completed a

Uniform Residential Loan Application in February 2004 to refinance the original loan. (Doc. 76-

2, Exh. 21 at 17-23). First Franklin was the lender for the loan, which closed on February 10,

2004 (2004 loan). (Doc. 75, Exh. 13). According to Randall Craycraft, who was managing

member of Members Title Agency (Members Title), Members Title was the Settlement Agent

for the 2004 loan on behalf of the lender. (Randall Craycraft Depo., Doc. 76-1 at 4-5). The loan

was secured by a mortgage signed solely by plaintiff and notarized by Michelle Schmidt, Notary

Public, State of Ohio. (Doc. 75, Exh. 13). Members Title sent a payment to Fairbanks Capital in

the amount of $52,130.34 to pay off the original loan. (Doc. 76-1, Craycraft Depo. at 9, 13).

The mortgage was recorded in the Hamilton County, Ohio Recorder's Office in February 2004.

(Doc. 79, Exh. 3). The 2004 loan file includes several documents bearing plaintiff's signature.

(Doc. 76-2, Exh. 21). The 2004 loan file also includes copies of personal financial and other records of plaintiff, including his divorce decree (*Id.* at 83-84), driver's license (*Id.* at 86-87) and the declarations page of his homeowners policy for the period February 5, 2004 to February 5, 2005 (*Id.* at 85). (*See also* Doc. 76-1, Craycraft Depo. at 27-29).

On October 26, 2004, plaintiff executed a mortgage in the amount of $28,000 with The Home Ownership Center of Greater Cincinnati, Inc. (Home Ownership loan). (Doc. 75, Exh. 20 at 18). The parties to the mortgage entered into a "Modification Agreement" on December 7, 2004, pursuant to which the loan amount was increased to $38,000 (2004 balloon mortgage). (*Id.* at 19). The 2004 balloon mortgage was a deferred mortgage with a 0% interest rate per annum payable at the rate of $10.00 per month beginning March 1, 2005, until February 1, 2025. (*Id.*). Both the Home Ownership loan and the 2004 balloon mortgage were recorded in the Hamilton County Recorder's Office. (*Id.* at 18-19). According to plaintiff, full disclosures were not made to him in connection with the 2004 balloon mortgage and he erroneously thought the original mortgage and the 2004 balloon mortgage had been combined. (Pltf. Aff., Doc. 4 at 19). Plaintiff alleges he made monthly payments for eight years under the mistaken belief that he was paying on both the original loan and the 2004 balloon mortgage with one check. (*Id.* at 20).

On August 2, 2010, servicing of the 2004 loan transferred from BOA to RCS. (Doc. 75, Exh. 20 at 33). RCS purchased the mortgage from First Franklin effective that same date. (*Id.* at 33-34). The assignment of the mortgage from First Franklin to RCS was recorded in the Hamilton County Recorder's Office on December 7, 2010. (*Id.* at 33). Around that same time, plaintiff began sending his mortgage payments to RCS at the direction of First Franklin. (Pltf. Aff., Doc. 4 at 19). In late 2011 and early 2012, plaintiff asked RCS to send him documentation related to the mortgage it was servicing and a copy of the note. (Doc. 10 at 35). In response,

RCS sent plaintiff documents dated February 10, 2004, bearing plaintiff's signature and

consisting of an application for a loan to refinance for the purpose of "Cash-Out/Debt

consolidation," a 30-year adjustable rate note issued by First Franklin in the amount of $63,750

that amortized in 2034, and the original Settlement Statement for the 2004 loan. (Doc. 10 at 20-

25, 27-32). Plaintiff alleges he had neither agreed to nor signed the 2004 mortgage and he had

never applied to any company for debt consolidation; instead, the signatures on the documents

were forged. (Pltf. Aff., Doc. 4 at 19).

Plaintiff informed RCS repeatedly beginning in late 2011 that the 2004 loan was

fraudulent. (Doc. 10-1 at 35-37, 39, 41). RCS requested additional information from plaintiff to

investigate his claim of fraud. (Doc. 10-1 at 38). RCS informed plaintiff in July 2013 that it had

completed its investigation and had found insufficient proof of identification theft or fraud.

(Doc. 10-1 at 42). RCS also sent plaintiff a notice of default and intent to accelerate informing

plaintiff that the total he must pay to cure the default was $9,260.85, which included total

monthly payments of $8,579.70 for the period May 2012 to July 2013. (*Id.* at 43). Plaintiff

alleges that he never refinanced the 1999 loan and did not apply for or take out a new loan on

February 10, 2004.

## II. Plaintiff's motions related to his request to obtain a handwriting expert (Docs. 109, 112, 123, 125, 128, 129, 132)

### a. Procedural background

Plaintiff identified Curtis Baggett as his handwriting expert and produced Mr. Baggett's

expert report on September 10, 2014, and a supplemental report on March 16, 2015. (Docs. 38,

65). Defendants thereafter moved to exclude Mr. Baggett's testimony from future motions,

hearings and trial. (Doc. 71). After the matter was fully briefed, a hearing on the motion was

held on June 25, 2015. (Doc. 99). The undersigned issued a Report and Recommendation on

September 3, 2015, recommending that defendants' motion to exclude Mr. Baggett's testimony be granted. (Doc. 107). The District Judge adopted the Report and Recommendation by Order dated October 2, 2015. (Doc. 119).

Prior to issuance of the Order, on September 14, 2015, plaintiff filed a motion for leave to obtain a new handwriting expert. (Doc. 109). On September 17, 2015, plaintiff filed a "Notice" seeking leave of Court to designate Wendy Carlson as his handwriting expert. (Doc. 112). Plaintiff submitted a copy of Ms. Carlson's curriculum vitae and a list of cases in which she has been qualified as an expert, appointed by the court, and/or testified during the period from 2008 to 2015. (*Id*.).

Defendants BOA and RCS oppose plaintiff's motion for leave of Court to obtain a new handwriting expert and move to strike plaintiff's "Notice" seeking to designate Wendy Carlson as his handwriting expert. (Doc. 116). Defendants allege that plaintiff's request should be denied because plaintiff offers no authority in support of the request. Defendants also contend that they will be prejudiced if plaintiff is permitted to obtain an expert at this late stage of the litigation. Defendants further allege that the Notice should be stricken as untimely because the deadline for submission of expert reports expired more than one year ago and plaintiff has not obtained leave of Court to designate another expert. Finally, defendants allege that the Notice is improper because no expert report is attached.

In reply, plaintiff alleges that as a pro se litigant he is not required to provide authority in support of his request to designate Ms. Carlson as a handwriting expert. (Doc. 120). Plaintiff further alleges that he could not have disclosed Ms. Carlson as an expert at an earlier date in light of the Court proceedings related to his previously designated expert. Plaintiff alleges that defendants will not be prejudiced by the delay in designating Ms. Carlson as his expert because

the Court can provide defendants with an opportunity to depose her before ruling on the pending motions for summary judgment. Finally, plaintiff acknowledges that his Notice identifying Wendy Carlson as an expert includes only basic information, but he states he will provide an expert report if leave to designate her as an expert is granted.

Plaintiff has filed additional motions related to his request to name a new expert witness, including a motion for leave to amend his previous request to designate a new handwriting expert (Doc. 128) and an amended request (Doc. 129). Defendants BOA and RCS oppose plaintiff's motion for leave to amend his request to designate a new handwriting expert and amended request for leave to designate a handwriting expert. (Doc. 130). Defendants allege that plaintiff has not set forth any basis for the relief he requests as required under Fed. R. Civ. P. 7; plaintiff should not be permitted to re-open discovery given that the parties' summary judgment motions have been fully briefed; and plaintiff's request is actually an improper attempt to supplement arguments made in the parties' summary judgment motions. In reply, plaintiff contends that the filing of his motion to name a new handwriting expert has been necessitated by the Court's exclusion of Curtis Baggett as an expert witness. (Doc. 131). He states that he proposes to substitute Ms. Carlson for Mr. Baggett as an expert witness to support his claims. Plaintiff reiterates that defendants would not be prejudiced by the substitution because the Court can grant them an opportunity to depose Ms. Carlson and delay ruling on the pending summary judgment motions. Plaintiff also filed a "Request for Leave of Court to Allow the Court to See This Truth" on December 21, 2015. (Doc. 132). The request consists simply of a retyped or cut and pasted email that proposed expert witness Wendy Carlson purportedly sent to plaintiff regarding signatures he had asked her to examine in which she offers to prepare a report detailing

Case: 1:14-cv-00327-TSB-KLL Doc #: 135 Filed: 01/06/16 Page: 8 of 39  PAGEID #: 2125

dissimilarities in those signatures.  (*Id.*).  Defendants oppose the request because it does not state the grounds for the relief requested as required under Fed. R. Civ. P. 7.  (Doc. 133).

      **b.  Plaintiff's request to designate a new handwriting expert should be denied (Docs. 109, 112, 128, 129) and his miscellaneous request for relief (Doc. 132) is denied.**

In the Report and Recommendation and Order granting defendants' motion to exclude Mr. Baggett's testimony, the Court undertook an extensive analysis of the qualifications and methodology of plaintiff's designated expert in accordance with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702.  (Docs. 117, 119).  The Court determined that Mr. Baggett was not qualified to give an opinion regarding whether plaintiff's signature on the 2004 loan documents was forged.  Plaintiff should not be permitted to designate a second handwriting expert as a substitute for Mr. Baggett following the exclusion of his testimony by the Court for the reasons explained below.

Several courts have addressed the propriety of allowing a party to supplement expert testimony or add an expert in a case where the party's expert has been disqualified following a *Daubert* hearing.  In *Nisus Corp. v. Perma-Chink Sys., Inc.*, 327 F. Supp.2d 844 (E.D. Tenn. 2003), *aff'd*, 128 F. App'x 156 (Fed. Cir. 2005), the district judge overruled the plaintiff's objections to the magistrate judge's order disallowing a supplemental expert report.  The district judge agreed with the magistrate judge that a party whose expert has been disqualified under *Daubert* is not entitled to "perform new and different tests with new and different experts and to start expert disclosure, discovery, and depositions anew."  *Id.* at 853 (quoting *Loral Fairchild Corp. v. Victor Co.*, 911 F. Supp. 76 (E.D.N.Y. 1996)).  The district judge found that the plaintiff's request to have new experts conduct testing not previously performed and repeat previous testing as verification was an "unabashed attempt to remedy the deficiencies" in the

original expert's opinions and testimony, which was unacceptable at the summary judgment stage of the litigation. *Id.* at 853-54.

In rendering the decision to deny plaintiff's request to file a supplemental expert report in *Nisus Corp.*, the magistrate judge relied on three cases which the district judge identified as "seminal cases." *Id.* at 854. The first case is *Weisgram v. Marley Co.,* 528 U.S. 440 (2000). In *Weisgram*, the Supreme Court addressed the following issue: whether an appellate court must remand for a new trial when it holds on appeal that expert testimony admitted at trial is inadmissible and excludes that testimony from consideration when ruling on whether to grant judgment as a matter of law. *Id.* at 447, 457. The Supreme Court held that an appellate court is permitted to direct the entry of judgment as a matter of law based on the remaining properly admitted evidence. *Id.* at 447. The Court reasoned:

> Since *Daubert* . . . parties relying on expert evidence have had notice of the exacting standards of reliability such evidence must meet. . . . It is implausible to suggest, post-*Daubert,* that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail. We therefore find unconvincing [the plaintiff's] fears that allowing courts of appeals to direct the entry of judgment for defendants will punish plaintiffs who could have shored up their cases by other means had they known their expert testimony would be found inadmissible.

*Id.* at 455-56 (citations omitted).

The second case is *Pride v. BIC Corp.,* 218 F.3d 566 (6th Cir. 2000), in which the district judge ruled on several motions submitted after the magistrate judge had issued a report and recommendation to exclude the plaintiff's expert witness testimony under *Daubert* and the Federal Rules of Evidence. The district court denied several motions on the ground they were "a transparent attempt to reopen the *Daubert* hearing now that the weaknesses in [the plaintiff's] expert testimony have been pointed out." *Id.* at 579. The district court found that the plaintiff had "ample opportunity to locate experts for this case, and her experts had ample opportunity to

develop their theories on how the accident occurred, to explain their underlying methodology, and test their theories prior to the *Daubert* hearing." *Id*. The Court of Appeals affirmed the district court's denial of the plaintiff's motions to reopen the *Daubert* inquiry as there was no evidence that the district court abused its discretion in holding that reopening the proceedings would be "contrary to all rules of fairness and proper procedure." *Id*. (citing *In re TMI Litigation Cases Consolidated II*, 922 F. Supp. 997, 1005 (M.D. Pa. 1996) ("excluding the plaintiff's untimely filings on the basis that admitting them would allow the plaintiff's experts to become 'moving targets' whose opinions were constantly changing and being supplemented in order to overcome proper pretrial procedures"), *reversed in part on other gds., In re TMI Litig.*, 193 F.3d 613, 729 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000)).

The third seminal case is *Nelson v. Tennessee Gas Pipeline,* 243 F.3d 244 (6th Cir. 2001), where the Court denied the plaintiffs' request to obtain new expert testimony after an adverse *Daubert* ruling. The Court rejected the plaintiffs' assertion that the magistrate judge abused his discretion and violated considerations of equity and fair play by not giving the plaintiffs "an opportunity to obtain expert testimony to remedy deficiencies in the proffered testimony before granting summary judgment." *Id*. at 249. The Court reasoned that plaintiffs "had adequate opportunity to develop their expert testimony, test their theories, and respond to defendants' specific challenges to the testimony." *Id*. The Court found that "fairness does not require that a plaintiff, whose expert witness testimony has been found inadmissible under *Daubert,* be afforded a second chance to marshal other expert opinions and shore up his case before the court may consider a defendant's motion for summary judgment." *Id*. at 250.

Consistent with the reasoning of these prior decisions, the Court finds that plaintiff's motion to designate Wendy Carlson as a new expert witness in this matter should be denied.

Plaintiff's complaint was filed in this Court more than 18 months ago in April 2014. (Docs. 1, 4). A deadline of September 26, 2014, was established for the parties to identify and produce primary expert reports. (Doc. 25). Between the time plaintiff identified Curtis Baggett as his handwriting expert and produced Mr. Baggett's expert report (Docs. 38, 65) and the date the Court granted defendants' motion to exclude Mr. Baggett as an expert on October 2, 2015 (Doc. 119), the discovery and dispositive motion deadlines expired (Docs. 55, 68) and each of the parties filed summary judgment motions. (Docs. 82, 83, 85). The motions have been fully briefed and are ripe for resolution. To allow plaintiff to designate a new expert witness at this point would frustrate the procedures designed to insure expeditious resolution of litigation before the Court and unfairly prejudice defendants. If plaintiff were permitted to designate Ms. Carlson as a handwriting expert at this juncture, defendants would be required to conduct discovery related to plaintiff's newly designated expert; raise yet another *Daubert* challenge in the likely event they are not willing to accept Ms. Carlson's expertise and methodology in this matter; and face an inordinate delay in resolution of the pending motions for summary judgment, which are fully briefed.

Plaintiff has not presented a valid reason for reopening the deadline for designating expert witnesses, submitting expert reports, and further delaying these proceedings. Plaintiff simply seeks to correct deficiencies in Mr. Baggett's report by substituting a new handwriting expert for Mr. Baggett (*see* Doc. 129 at 3), whose testimony was excluded by the Court based on its determination that his qualifications and proposed expert opinion did not satisfy *Daubert* and the Federal Rules of Evidence. Although plaintiff has not proffered a new expert report, plaintiff provides no indication that the opinion Ms. Carlson proposes to offer differs in any material respect from the opinion offered by Mr. Baggett. Plaintiff should not be permitted to begin anew

11

the process of designating an expert to offer the same opinion offered by Mr. Baggett in an attempt to remedy the deficiencies in Mr. Baggett's qualifications and methodology previously found by the Court. This is particularly true given that there is no indication Ms. Carlson's qualifications and methodologies are superior to those of Mr. Baggett such that she would be an acceptable substitute for him. Plaintiff had ample opportunity to develop his expert testimony and respond to defendants' challenges to the testimony after filing the expert report on September 10, 2014 (Doc. 38) and a supplement to the report on March 16, 2015 (Doc. 65). Plaintiff should not be granted yet another opportunity to designate an expert. To do so at this late date would unfairly prejudice defendants by further delaying the proceedings, which are at the summary judgment stage.

For these reasons, plaintiff's motions to designate a new expert (Doc. 109), to designate Wendy Carlson as his handwriting expert (Doc. 112), and to amend his previous request to designate a new handwriting expert (Doc. 128), as well as the amended request (Doc. 129), should be denied. Plaintiff's "Request for Leave of Court to Allow the Court to See This Truth" (Doc. 132) is denied for failure to comply with Fed. R. Civ. P. 7(b)(1)(B), which provides that a motion must "state with particularity the grounds for seeking the order."

### c. Plaintiff's motion for review of the summary of events and motion for a hearing on his request for review (Docs. 123, 125)

Plaintiff filed a "Request for Leave of Court to Look at the Summary of Events Confirming the Need for Another Handwriting Expert" on October 19, 2015 (Doc. 123) and a motion for a hearing on his request for the Court to review the summary of events (Doc. 125). Defendants BOA and RCS oppose plaintiff's motion for a hearing on his request to review the summary of events. (Doc. 126). Defendants allege that the motion should be denied pursuant to the Federal Rules because plaintiff has provided no legal basis for his request. (*Id.*). In reply,

12

plaintiff indicates that he is seeking a hearing in order to develop the facts underlying his allegations of forgery. (Doc. 127).

Fed. R. Civ. P. 7(b)(1)(B) provides that a motion must "state with particularity the grounds for seeking the order." Further, S.D. Ohio Civ. R. 7.1(b)(2) provides that a party may apply to the Court for oral argument where it is "deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented. . . ." Neither rule is satisfied here. Plaintiff has not explained why he is entitled to an oral hearing in connection with the summary of facts he has asked the Court to review. Plaintiff has not submitted the summary in connection with a specific motion and has not requested any independent relief in connection with the summary of events itself. Insofar as plaintiff has submitted the summary of events and request for a hearing in support of his motion to designate a new expert witness, plaintiff has not shown good cause for filing additional memoranda in support of his motion. *See* S.D. Ohio Civ. R. 7.2(a)(2) (only a memorandum in opposition and reply memorandum are permitted in connection with a motion and no additional memoranda are permitted except upon leave of court for good cause shown). Accordingly, plaintiff's motion for a review of the summary of events (Doc. 123) and a hearing on the motion for review of summary of events (Doc. 125) are denied.

## III. Plaintiff's miscellaneous motions (Docs. 121, 122)

Plaintiff has filed two miscellaneous motions in which he asks the Court to examine the signatures on the 2004 loan documents: "Request for Leave of Court to Take Another Look at the Signatures" (Doc. 121) and "Motion for Another Look at the Signatures and for Pursuit of Truth and Justice" (Doc. 122). In his request for the Court to review signatures filed on October 8, 2015, plaintiff asks the Court to examine documents bearing his "true signature" and the 2004

loan documents which bear his allegedly forged signatures, both notarized and not notarized. (Doc. 121).  In his motion for identical relief filed that same date, plaintiff has submitted what appear to be cut and pasted or retyped email communications that plaintiff allegedly exchanged with notary Michelle McLaughlin.  (Doc. 122-1 at 2).  In the email exchange, Ms. McLaughlin purportedly informed plaintiff that she notarized a loan document dated February 10, 2004, which bears plaintiff's signature and which consists of a "signature page" and a "Notary page." (*Id.*).  The email references two pages numbered "A1" and "A2" which are attached to the emails.  (*Id.* at 3-4).  Ms. McLaughlin allegedly wrote that she notarized page A1 and that the notary stamp is on page A2, but that both pages are part of the same mortgage document.  (*Id.* at 2).  Plaintiff alleges that the notary's statements present an "unbelievable explanation" as to why there is no notary stamp on the signature page itself.  (Doc. 122 at 1).  Plaintiff has also submitted what he purports to be samples of his true signature and copies of mortgage documents that purportedly bear his forged signature, both notarized and not notarized.  (*Id.* at 1-2; Doc. 122-1).

Defendants oppose plaintiff's requests for the Court to examine the signatures.  (Doc. 124).  They allege that plaintiff's filings are impermissible attempts to supplement his arguments related to the parties' summary judgment motions in violation of S.D. Ohio Civ. R. 7.2(a)(2). Defendants further allege that plaintiff has neither identified the grounds upon which his motions are based nor provided any supporting authority for his motions as required under Fed. R. Civ. P. 7(b)(1)(B).

Plaintiff's motions are not well-taken.  Plaintiff has not submitted any authority in support of his request that the Court undertake a review of the signatures.  *See* Fed. R. Civ. P. 7(b)(1)(B); S.D. Ohio Civ. R. 7.2(a)(1).  Further, insofar as plaintiff seeks to submit the

additional documentation to support or oppose the pending summary judgment motions, addition

of the documents to the record would serve no purpose.  There is nothing in the purported email

communications between plaintiff and notary Michelle McLaughlin that supports plaintiff's

claim that the mortgage documents were forged.[2]  Further, although plaintiff alleges that he has

attached documents with his true and his forged signatures to the motion, he has not submitted an

affidavit or declaration attesting to the veracity of his representations concerning the signatures

on these documents.  Nor has plaintiff submitted any other evidence in conjunction with his

motions to support his allegation that his signature was forged on documents he has attached to

the motions.

　　　　For these reasons, plaintiff's motions for the Court to review signatures that he represents

to be either authentic or forged (Docs. 121, 122) are denied.

**IV. Plaintiff's motion for summary judgment (Doc. 82)**

　　　**a. The parties' positions**

　　　　Plaintiff filed a motion for summary judgment on May 29, 2015.  (Doc. 82).  The motion

is a cursory two-page summary of the basis for plaintiff's lawsuit.  Plaintiff alleges that non-

party First Franklin made a loan to him on February 10, 2004, which was publicly recorded; the

loan paid off an existing loan dating back to 1999 (the original loan); and plaintiff did not

execute the loan but instead it was fraudulently executed by unknown individuals.  Plaintiff

alleges that as a result of the fraud, he made payments for eight years on a loan he did not

execute and he has paid more money than he would have been required to pay under the original

loan.  Plaintiff further alleges that RCS, the current owner of the 2004 loan, has no authority to

enforce the loan because it is fraudulent.  Plaintiff seeks to void the loan, obtain a release of the

---

[2] Because the content of the alleged email communications does not support plaintiff's forgery claim, the Court need not address the admissibility of these email communications.

lien, and recover damages.  Plaintiff alleges that defendants have not produced any evidence in discovery or by deposition testimony that refutes the facts he alleges or that shows there is a disputed issue of material fact.  Plaintiff cites no authority in support of the motion and has not attached any supporting affidavits or documentation.

Defendants BOA and RCS oppose plaintiff's motion for summary judgment.  (Docs. 92, 98).  Defendant BOA alleges that plaintiff's motion for summary judgment consists of nothing more than a summary of allegations in his complaint with no supporting documentation or legal authority.  (Doc. 92).  Defendant BOA further alleges that plaintiff has not produced evidence to substantiate his fraud claim as is his burden under Ohio law.  Defendant RCS alleges that plaintiff's motion is not supported by any admissible evidence.[3]  (Doc. 98).  Defendant RCS further alleges that it has produced documentation that establishes a genuine issue of material fact on plaintiff's claims against it.  RCS alleges it has produced evidence and documentation that shows First Franklin could not have created a false loan with plaintiff's forged signatures.  (Doc. 98, citing Doc. 79, Exhibits).  RCS further alleges that plaintiff has not stated a claim against it for rescission, quiet title or damages under Ohio law.

In reply, plaintiff alleges that defendants have not presented allegations with supporting evidence that calls into dispute the sworn factual allegations and evidence he has presented.[4]  (Doc. 102-1 at 20).  Plaintiff alleges that his signature on the 2004 loan documents is forged and defendants have not introduced any testimony or evidence that refutes his affidavits establishing that he had no part in the execution or creation of the 2004 loan.  Plaintiff alleges that defendant

---

[3] Defendant RCS also addresses arguments plaintiff presented in an amended motion for summary judgment filed on June 4, 2015.  (Doc. 89).  The Court struck the amended motion for summary judgment from the record by Order dated September 3, 2015.  (Doc. 107).  The Court therefore will not address arguments related to the amended motion.

[4] Plaintiff filed a motion for leave to file the reply (Doc. 102), which the Court denies as moot.

RCS "came into ownership of this [] loan long after [2004] and could have no first hand knowledge" about execution of the loan. (Doc. 102-1 at 20, 22). Plaintiff alleges he is not suing to rescind the loan or to quiet title but instead is seeking to be released from a fraudulent contract. (*Id*. at 31). Plaintiff purports to rely on the affidavit he states he executed on July 6, 2012, which he alleges is unrebutted.[5] (*Id*. at 2). Plaintiff also relies on loan documentation that he alleges raises questions about the validity of the loan, such as the relationship between certain entities involved in the loan transaction, the identities of the parties who were actually involved in the transaction, the chronology of certain steps of the transaction, and alleged discrepancies in the amounts set forth in the Settlement Statement.

### b. Summary judgment standard

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1982). The movant bears the burden of demonstrating that no material facts are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant may carry its burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case by "pointing out to the court" that the non-moving party lacks evidence to

---

[5] As the Court noted earlier, this affidavit does not appear to be part of the record.

support an essential element of its case. *See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (quoting *First Nat'l Bank*, 391 U.S. at 288-89).

Because plaintiff is proceeding pro se, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings).

### c. Fraud under Ohio law

Plaintiff has alleged subsequent to filing the complaint that he is not claiming that either defendant committed fraud. (Doc. 108 at 23). Plaintiff alleges that he instead claims that defendants willfully and wrongfully continued to "enforce a loan created by forgery" without conducting an investigation to determine who had forged the loan documents. (*Id*. at 23-24). The Court has previously determined that plaintiff's claim against BOA is properly characterized

as a claim for fraud.[6]  Plaintiff's complaint filed in April 2014 alleges that the 2004 loan was

fraudulent and he requests the following relief: "[I]n the case of [BOA] as successor to First

Franklin Financial Corporation, to pay the amounts he wrongfully was deceived into paying First

Franklin Financial Corporation during the time they were holders of this loan from its origination

Feb. 10, 2004 to the time of its assignment to [RCS] August 1, 2010." (Doc. 4 at 17).  Plaintiff's

complaint against RCS similarly alleges fraud by this defendant.  Plaintiff alleges that RCS has

willfully and wrongfully enforced a "fraudulent contract" against him.  (*Id*. at 11).  Plaintiff

seeks an injunction against RCS enjoining it from foreclosing on the Property and damages to

compensate plaintiff for the payments he has made to RCS toward the allegedly fraudulent loan.

(*Id*. at 16-17).  In light of plaintiff's allegations and the nature of his claims, plaintiff cannot re-

characterize his claims as based on a theory of recovery other than fraud.  Thus, the question

before the Court on plaintiff's motion for summary judgment against both BOA and RCS is

whether plaintiff has carried his burden to show there is no genuine issue of material fact on his

fraud claims against these defendants.

   The elements of a fraud claim under Ohio law are: (1) a misrepresentation of a material

fact; (2) made with knowledge of its falsity, or with such utter disregard as to its truth that

knowledge may be inferred; (3) with the intent to induce another's reliance on it; (4) justifiable

reliance upon the representation or concealment; and (5) a resulting injury proximately caused by

the reliance. *Burr v. Bd. of Cnty. Comm'rs*, 491 N.E.2d 1101, 1105 (Ohio 1986).

---

[6] In the Report and Recommendation on BOA's motion for judgment on the pleadings, the undersigned construed plaintiff's claim against BOA as a claim that "plaintiff was induced by First Franklin's misrepresentations to make payments on a loan that was fraudulently originated by First Franklin; plaintiff suffered damages as a result of his justifiable reliance on First Franklin's fraudulent misrepresentations; and Bank of America is liable as First Franklin's successor for First Franklin's fraudulent misrepresentations and plaintiff's resulting injury." (Doc. 40 at 10).

Under Ohio law, "a facially valid mortgage bears a strong presumption of validity." *In re Zaptocky*, 250 F.3d 1020, 1024 (6th Cir. 2001). Even a mortgage that is defectively executed is valid as between the parties to the mortgage, in the absence of fraud. *Lasalle Bank N.A. v. Zapata*, 921 N.E.2d 1072, 1075 (Ohio App. 6th Dist. 2009) (citing *Citizens Natl. Bank in Zanesville v. Denison*, 133 N.E.2d 329 (Ohio 1956), superseded by statute as stated in *In re Nowak*, 820 N.E.2d 335 (Ohio 2004)). *See also In re Seymour*, 442 B.R. 652, 658 (Bankr. S.D. Ohio 2010). "[W]here a mortgagor can show that the mortgage is a forgery, or was executed as a result of fraud, the mortgage is ineffective and does not convey an interest in the property." *In re Shanker*, 247 B.R. 115, 2006 WL 1520082, at *6 (B.A.P. June 5, 2006). One who challenges a facially valid mortgage must "prove the instrument is defective by clear and convincing evidence." *In re Zaptocky*, 250 F.3d at 1024-25 (citing *Coshocton Nat'l Bank v. Hagans*, 178 N.E. 330 (Ohio App. 5th Dist. 1931) "(a facially valid mortgage 'carries with it a presumption of validity, and, in order to destroy its effect as a mortgage it must be shown to be defective by the contesters.'"); *Helbling v. Williams (In re Williams)*, 240 B.R. 884, 888-89 (Bankr. N.D. Ohio 1999)).

Ohio law provides that "[i]n the absence of clear and convincing proof of fraud or forgery, the certificate of a notary stating that the mortgage release was freely signed and acknowledged by the mortgagee is conclusive evidence of the facts stated in the notary's certification." *Huntington Nat'l Bank v. Hoffer*, No. 2010-CA-31, 2011 WL 192725, at *2 (Ohio App. 2nd Dist. Jan. 21, 2011) (citing *Waddell v. Frasure*, No. 05CA3040, 2006 WL 3350645 (Ohio App. 4th Dist. Nov. 8, 2006)); *see also JP Morgan Chase Bank, N.A. v. Parker*, No. 2014-CA-17, 2014 WL 7463142 (Ohio App. 2d Dist. Dec. 31, 2014) (same). There is no "per se rule" in Ohio that "the mortgagor's testimony alone is never sufficient to overcome the presumption of

validity of the notary's certificate of acknowledgment." *In re Bowling*, 314 B.R. 127, 135
(Bankr. S.D. Ohio 2004) (citing *In re Zaptocky,* 250 F.3d 1020; *In re Collins*, 292 B.R. 842
(Bankr. S.D. Ohio 2003) ("on motion for summary judgment, the court considered whether
debtor's testimony alone was sufficient to determine that the mortgage was invalid when neither
witnesses nor notary were present at the time the mortgage was signed")). *See also Bank of New
York Mellon v. Villalba*, No. 26709, 2014 WL 4824805, at *6 (Ohio App. 9th Dist. Sept. 30,
2014) ("[A] debtor's allegation that he never signed a mortgage and that the certificate of
acknowledgement is fraudulent is a sufficient defense to an action to enforce the mortgage.")
(quoting *Zapata,* 921 N.E.2d 1072).

### d. Plaintiff's motion for summary judgment should be denied.

Plaintiff is not entitled to summary judgment on his claims against RCS and BOA. Read
together, plaintiff's motion for summary judgment and reply memorandum do not demonstrate
the absence of a genuine issue of material fact on plaintiff's claims entitling him to relief.
Plaintiff has not produced evidence or directed the Court to specific facts in the record that
demonstrate there is no genuine issue for trial. Plaintiff's motion for summary judgment is a
barebones summary of the allegations of his complaint. (Doc. 82). Plaintiff has expounded on
his allegations in his reply memorandum and has cited portions of the deposition testimony and
attached documentation to support his claim that the 2004 loan was fraudulently executed. (Doc.
102-1). However, defendants have produced evidence that refutes plaintiff's allegations and his
claims of fraud. (Docs. 92, 98).

Defendant BOA has incorporated its motion for summary judgment into its response
memorandum to show that plaintiff cannot produce evidence to establish his fraud claim against
BOA. (Doc. 83). BOA alleges that plaintiff has produced no evidence to show that BOA made

a material misrepresentation, with knowledge of its falsity, and with intent to mislead plaintiff in connection with the 2004 loan. (Doc. 92 at 2-3). Defendant BOA's position is well-taken.

There is no evidence that BOA knew or had reason to know at any time that the 2004 loan documents were not valid. Plaintiff testified at his deposition that he thinks BOA should have known that the 2004 loan documents contained his forged signature based on alleged discrepancies between the signatures on those documents and his signatures on checks he submitted to BOA for mortgage payments beginning in 2010. (Doc. 75-1 at 114-15). Plaintiff's allegation is based on nothing more than speculation. His allegation presumes that the 2004 loan documents were forged, which is not an established fact. Assuming, *arguendo*, that plaintiff's signature was forged on the 2004 loan documents, plaintiff has not introduced any evidence that shows or permits an inference that BOA actually knew or had reason to know of the forgery at any time. Plaintiff testified at his deposition only that he "think[s]" BOA "should have known" prior to 2012 when he challenged the mortgage that the signatures on the loan documents were not his by comparing those signatures to his signatures on the payment checks he wrote. (*Id*. at 114-15). This vague and conclusory testimony is insufficient to establish actual knowledge of the forgery on the part of BOA. Further, plaintiff's personal belief that BOA should have known the documents were forged is insufficient to support a finding that BOA should have been aware of the purported forgery. Plaintiff has not produced evidence to show that the signatures he seeks to compare are distinguishable in any way that would be apparent to an objective observer such that BOA should have been alerted to the possibility of forgery and fraud. Absent competent evidence that BOA knew or had reason to know that the 2004 loan documents were forged, plaintiff cannot show that BOA acted with an intent to mislead plaintiff by continuing to collect payments on a mortgage it knew to be fraudulent. Plaintiff's speculative testimony that

BOA should have realized his signature on notarized and other mortgage documents was forged is insufficient to prove that BOA made a misrepresentation of a material fact to plaintiff in connection with the 2004 loan, with knowledge of its falsity or with such utter disregard as to its truth that knowledge may be inferred, and with the intent to induce plaintiff's reliance on the misrepresentation.

Insofar as plaintiff seeks to premise liability against BOA as successor to First Franklin, plaintiff has not produced evidence to show that BOA can be held liable for the alleged fraudulent acts of First Franklin. Plaintiff alleges that in February 2012, he called the First Franklin customer service number and was told that BOA "took over" First Franklin's operations. (Doc. 102-1 at 5). Plaintiff has not introduced any evidence to demonstrate the nature of the relationship between First Franklin and BOA and to show that BOA can be held legally liable for acts of First Franklin based on the parties' relationship. Moreover, plaintiff has not submitted any evidence to show that BOA had any knowledge of or involvement in any alleged fraud committed by First Franklin in connection with the 2004 loan.[7] Absent such evidence, there is no genuine issue as to whether BOA can be held liable for any fraudulent acts of First Franklin. For these reasons, plaintiff is not entitled to summary judgment on his fraud claim against BOA under either a direct theory of liability or a successor theory of liability.

Nor is plaintiff entitled to summary judgment on his fraud claim against RCS. RCS has submitted evidence that refutes plaintiff's allegation that his signature on the 2004 loan documents was forged and supports a finding that plaintiff executed the 2004 loan. (Doc. 98). Specifically, RCS has produced several documents from the 2004 loan file that bear plaintiff's notarized signature. These include an "Occupancy Declaration," a "Warranty and Compliance

---

[7] First Franklin filed an answer admitting that it was acquired by BOA in 2008 as a wholly-owned subsidiary. (Doc. 7).

Agreement," and a "Correction Agreement, Limited Power of Attorney." (Doc. 79, Exh. 9).

Plaintiff testified at his deposition that his signature was forged on these documents despite the

fact that the signatures are notarized. (Doc. 75-1 at 38, 42-45). However, for the reasons

discussed below in connection with RCS's motion for summary judgment, plaintiff's testimony,

standing alone, is "insufficient in law to overcome the certificate of acknowledgement by the

notary" together with the other documentary evidence of record. *In re Zaptocky*, 250 F.3d at

1025 (quoting *Paramount Fin. Co. v. Berk*, 179 N.E.2d 788, 788 (Ohio App. 8th Dist. 1962)

("[s]ince the evidence relating to acknowledgement is confined to the testimony of the

mortgagors in this case, it is not sufficient to support a finding contrary to the certificate of

acknowledgement and the affirmative testimony of the notary himself.")

      In addition to the above notarized documents, RCS has produced personal documentation

that is part of the 2004 loan file and which postdates the 1999 loan to refute plaintiff's fraud

claim. The documentation consists of copies of plaintiff's driver's license issued on February 3,

2003, which served as Identification Validation Acknowledgement for the loan transaction (Doc.

79, Exh. 11); a paystub from his employer for the period September 16 to 30, 2003 (*Id.*, Exh.

12); plaintiff's 2003 W-2 statement (*Id.*, Exh 13); his 2002 state and federal tax returns (*Id.*, Exh.

14); plaintiff's 2003-2004 Payment History Report prepared by the Hamilton County Child

Support Enforcement Agency (*Id.*, Exh. 15); an insurance billing statement addressed to plaintiff

at his home address for the policy period February 5, 2004 to February 5, 2005 and a

declarations page (*Id.*, Exh. 16); and a payoff quote for the original loan provided by Fairbanks

Capital Corp. (*Id.*, Exh. 17). As discussed more fully in connection with defendants' motions

for summary judgment, the presence of plaintiff's personal documentation in the 2004 loan file

refutes plaintiff's claim that he had no involvement in the creation and execution of the 2004 loan.

Finally, RCS contends plaintiff is not entitled to summary judgment on his claims against it because the remedies he seeks to recover in this action are not available to him. (Doc. 98 at 6-8). RCS alleges that although plaintiff styles his claim as "Willful, Wrongful, Mistaken and Erroneous Enforcement of Fraudulent Contract" (Doc. 4 at 10), plaintiff actually seeks to rescind the contract, quiet title, and recover damages. RCS contends that plaintiff cannot establish liability based on any of these theories. In response, plaintiff alleges that he does not seek to rescind the contract or to quiet title but instead he seeks to be released from a forged and fraudulent contract. (Doc. 102-1 at 31-32). Plaintiff takes the position that no mortgage contract was ever formed in this case with respect to the 2004 loan because he did not sign the loan documents. (*Id*. at 31). Instead, he alleges the contract was procured by fraud. (*Id*.).

As discussed earlier, plaintiff's claims against RCS challenging the validity of the 2004 loan and mortgage contract sound in fraud. It is well-settled under Ohio law that a contract procured by fraud is voidable at the election of the defrauded party. *Prudential Ins. Co. of Am. v. Carr*, 199 N.E.2d 412, 414 (Ohio Com. Pl. 1964). Fraud will preclude the enforcement of a mortgage against the mortgagor. *Zapata*, 921 N.E.2d at 1075-76. However, for the reasons explained above and further discussed in connection with RCS's motion for summary judgment (Doc. 85), plaintiff has failed to introduce evidence that permits a reasonable inference that the 2004 loan was procured by fraud. Accordingly, plaintiff is not entitled to summary judgment on his claims against defendant RCS.

For these reasons, plaintiff's motion for summary judgment against defendants BOA and RCS (Doc. 82) should be denied.

## V. Defendant RCS's motion for summary judgment (Doc. 85)

### a. The parties' positions

Defendant RCS moves for summary judgment on plaintiff's claims against it. (Doc. 85). Defendant RCS alleges that plaintiff cannot produce any evidence on summary judgment to show that First Franklin concocted a scheme to refinance his existing mortgage loan without his consent by forging his signature on numerous documents. Defendant RCS has submitted an affidavit and supporting documentation in support of its motion. (Doc. 79). Defendant RCS alleges that evidence showing that several of plaintiff's personal documents were submitted in connection with the 2004 loan application and that several of the documents were notarized permits only one conclusion: no reasonable jury could find in favor of plaintiff on his fraud claim against RCS.

In response, plaintiff relies on allegations he states he made in his affidavit dated July 6, 2012.[8] (Doc. 111 at 4). Plaintiff alleges he began sending his checks to RCS in July 2010. (*Id.* at 5). Plaintiff denies that he applied for the 2004 loan and alleges that his signature on the loan documents is forged. Plaintiff also alleges there are unexplained and suspicious discrepancies and contradictions in the loan documents and surrounding circumstances which demonstrate that the 2004 loan is not valid. Plaintiff admits he could not provide an explanation "under oath" at his deposition as to how his private documents were obtained and became part of the 2004 loan file; however, he alleges there is a "plausible explanation," which he has set forth in his response to the summary judgment motion. (*Id.* at 23-24). Plaintiff also posits an explanation for how his forged signature could have been notarized. (*Id.* at 26-27). Plaintiff has attached documentation to his response in support of his theories. (Doc. 111-1).

---

[8] As noted previously, there is no indication that plaintiff actually filed this affidavit with the Court. However, his allegations appear to restate those made in the March 19, 2014 affidavit attached to his complaint. (Doc. 4 at 19-22).

**b. Motions related to plaintiff's supplemental affidavits (Docs. 86, 96, 110)**

On June 2, 2015, plaintiff filed a motion seeking an extension of time to file two supplemental affidavits in support of his claims. (Doc. 86). Plaintiff filed the supplemental affidavits that same date. (Doc. 87). On September 14, 2015, plaintiff filed a motion for leave to file the two supplemental affidavits with the omission of any references to Curtis Baggett, his handwriting expert whose testimony has been excluded by the Court. (Doc. 110).

Defendant BOA moves to strike the second supplemental affidavit on the ground it includes statements by plaintiff that directly contradict his deposition testimony. (Doc. 96). Defendant BOA contends that while plaintiff testified at his deposition that he did not know how either Members Title or BOA had come to possess a copy of his driver's license which is part of the 2004 loan file, he posits a theory in his supplemental affidavit as to how Members Title may have obtained his driver's license in an attempt to create an issue of fact. Defendant BOA argues this is a violation of the Federal Rules. (*Id*. at 2, citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir. 1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony.") (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)). "The rule set forth in *Reid* is grounded on the sound proposition that a party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists. *Reid* and its progeny have thus barred the nonmoving party from avoiding summary judgment by simply filing an affidavit that directly contradicts that party's previous testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006) (citing, e.g., *Peck v. Bridgeport Machines, Inc.,* 237 F.3d 614, 619 (6th Cir. 2001) ("a post-deposition affidavit submitted by the plaintiff's expert was 'not cognizable for purposes of the summary

judgment decision' because it was 'plainly contradictory' to the expert's previous deposition testimony")).

Defendants BOA and RCS oppose plaintiff's motion to file supplemental affidavits with references to Curtis Baggett excluded. (Doc. 117). They allege plaintiff has cited no authority for filing the affidavits. They further allege that the affidavits are not made on personal knowledge and do not set out facts that would be admissible in evidence. (*Id.* at 2-3, citing Fed. R. Civ. P. 56(c)(4)). Defendants further allege that the affidavits do not comply with federal affidavit requirements because although notarized, there is no indication that they were sworn or given under oath or penalty of perjury.[9] (*Id.* at 3-4, citing 28 U.S.C. § 1746(2); *Fraker v. Marysville Exempted Village Sch.*, 696 F. Supp.2d 887, 894 (S.D. Ohio 2010)).

The Court will deny plaintiff's motion seeking an extension of time to file the supplemental affidavits (Doc. 86) and plaintiff's motion to file supplemental affidavits with references to Curtis Baggett excluded (Doc. 110). Plaintiff's affidavits (Docs. 87, 110-1) are replete with inadmissible legal arguments, hearsay, speculation, and statements that are not within plaintiff's personal knowledge. *See* Fed. R. Civ. P. 56(c)(4).

Further, plaintiff's second supplemental affidavit directly contradicts plaintiff's previous deposition testimony. Plaintiff testified at his deposition that although First Franklin had a copy of his driver's license issued in 2003 in its file, he did not know how or why the title agency possessed a copy of the license. (Doc. 75-1 at 56-58). In his supplemental affidavits, plaintiff has posited a theory as to how his driver's license was obtained and used to generate the 2004

---

[9] Defendants also contend that the affidavits do not comply with the requirements of Ohio law. However, Ohio procedural law does not govern in this diversity action. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (under the *Erie* doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).

loan. (Docs. 87, 110-1).  Plaintiff asserted that he gave his driver's license to Home Ownership

in 2004, prior to origination of the 2004 loan, in connection with the balloon mortgage. (Doc. 87

at 9, Doc. 110-1 at 9).  Plaintiff alleges that Home Ownership employed many different

companies to work on his house in 2004, and during "this year" a photo of his driver's license

made its way into the files of Members Title.  (*Id.*).  Plaintiff further alleges that Members Title

worked with Darin Monhollen, an employee of Gateway Mortgage (Gateway), as the originator

or broker for the disputed 2004 loan.  (*Id.*).  Plaintiff alleges that Gateway was also either the

originator or the broker of the original 1999 mortgage.  (*Id.*).  Plaintiff alleges it is his belief that

there was an opportunity for a Gateway employee to get possession of his driver's license, which

he had given to Home Ownership in connection with the balloon mortgage, and pass it along

with other documents which were used to create the 2004 loan.  (Doc. 87 at 10; Doc. 110-1 at

10).  Plaintiff's allegations positing an explanation for how First Franklin obtained a copy of his

driver's license in connection with the 2004 loan directly contradict his deposition testimony that

he had no knowledge as to how this occurred.  Plaintiff's allegations set forth in his supplemental

affidavits are not admissible into evidence for this reason.  *Aerel, S.R.L.*, 448 F.3d at 907.

Plaintiff's allegations are also inadmissible because his theory as to how his driver's license

became part of the 2004 loan file is based on inadmissible speculation rather than facts of which

plaintiff has first-hand knowledge.  *See* Fed. R. Civ. P. 56(c)(4).

      Accordingly, plaintiff's motions for an extension of time to file the supplemental

affidavits and motion to file the supplemental affidavits with references to Curtis Baggett deleted

(Docs. 86, 110) are denied.[10]  Defendant BOA's motion to strike the supplemental affidavit

(Doc. 96) is denied as moot.

---

[10] Because plaintiff's affidavits are invalid for the reasons stated above, the Court need not address whether the affidavits comply with 28 U.S.C. § 1746.

**c. Defendant RCS's motion for summary judgment should be granted.**

Defendant RCS has produced evidence that demonstrates there is no genuine issue of material fact on plaintiff's claims against it and that it is entitled to summary judgment as a matter of law. RCS has produced the affidavit of its authorized representative, Christy Metcalfe, who states as follows: RCS began servicing plaintiff's mortgage loan in August 2010. (Doc. 79, ¶ 4). As of May 20, 2015, the date of the affidavit, plaintiff had not made any monthly payments on the loan since April 2012. (*Id.*, ¶ 4). At the time RCS began servicing the loan, the prior servicer, defendant BOA, transferred business records relating to plaintiff's loan to RCS, including records related to the origination and closing of the 2004 loan. (*Id.*, ¶ 5). These records include the following documents:

1. Plaintiff's Adjustable Rate Note (Note) executed on February 10, 2004, which bears plaintiff's signature (Exh. 2)
2. The mortgage executed on February 10, 2004 (Mortgage) which was recorded with the Hamilton County, Ohio Recorder's Office and which bears plaintiff's notarized signature (Exh. 3)
3. An amendment to the Mortgage (Amendment) executed on February 20, 2004, ten days after the Note and Mortgage were executed, which includes a legal description of the property the Mortgage encumbers and a 1-4 Family Rider for the Mortgage. The Amendment bears plaintiff's notarized signature (Exh. 4)
4. The HUD-1 Settlement Statement for the closing of the 2004 loan executed on February 10, 2004, which bears plaintiff's signature (Exh. 5)
5. The Uniform Residential Loan Application executed on February 10, 2004, which includes information related to plaintiff's employment, income, expenses, assets and liabilities and which bears plaintiff's signature (Exh. 6)
6. The appraisal report for an appraisal performed in January 2004 of the Property encumbered by the Mortgage (Exh. 7)
7. Records showing plaintiff's monthly payment amount and including an escrow analysis relating to withholdings for plaintiff's property taxes and hazard insurance payments executed on February 10, 2004, which bear plaintiff's signature (Exh. 8)
8. Records dated February 10, 2004, which include an Occupancy Declaration, Warranty and Compliance Agreement, and Limited Power of Attorney, each of which bears plaintiff's notarized signature (Exh. 9)
9. A document executed February 4, 2004, by the original lender, First Franklin, verifying plaintiff's identity as required under the Federal Patriot Act (Exh. 10)
10. An Identification Validation Acknowledgement executed by the closing agent, Michelle Schmidt, on February 10, 2004, acknowledging that she had reviewed plaintiff's state

issued driver's license and had verified his identity, and copies of the front and back of
plaintiff's driver's license (Exh. 11)
11. Plaintiff's pay statements from September 2003 (Exh. 12)
12. Plaintiff's 2003 W-2 statement (Exh. 13)
13. Plaintiff's 2002 federal and state tax returns (Exh. 14)
14. Plaintiff's child support payment history report dated February 3, 2004 (Exh. 15)
15. Plaintiff's homeowner's insurance declarations page for the period February 5, 2004 to
February 5, 2005 (Exh. 16)
16. The payoff statement for plaintiff's 1999 mortgage loan issued by Fairbanks Capital
(Exh. 17)

(*Id.*, ¶¶ 7-22).

Plaintiff does not challenge the authenticity of many of these documents. Moreover, at

his deposition plaintiff authenticated the copies of his 2002 tax returns (Doc. 75-1 at 26-27), his

driver's license issued on February 3, 2003 (*Id.* at 27), his child support payment history report

(*Id.* at 28-29), and his 2003 W-2 statements. (*Id.* at 34). Plaintiff testifed, however, that his

signature is forged on the documents and that his personal documents were obtained in

connection with the 2004 loan without his consent. (*Id.* at 56-58). Plaintiff has not produced

competent evidence to support his allegations and create a genuine issue of material fact on his

claims against RCS for the reasons discussed below.

Several of the documents RCS has produced from the 2004 loan file bear plaintiff's

notarized signature. (Doc. 79, Exh. 9). These include the "Occupancy Declaration," "Warranty

and Compliance Agreement," and "Correction Agreement, Limited Power of Attorney." (*Id.*).

Plaintiff testified at his deposition that he did not sign any of the 2004 loan documents and that

the signatures on the documents are not his. (Doc. 75-1 at 32, 38, 42-46). However, for the

reasons discussed in connection with plaintiff's motion for summary judgment, plaintiff's

deposition testimony, standing alone, is "insufficient in law to overcome the certificate of

acknowledgement by the notary" and the additional documentary evidence of record. *In re*

*Zaptocky*, 250 F.3d at 1025 (quoting *Paramount Fin. Co.*, 179 N.E.2d at 788) ("[s]ince the

evidence relating to acknowledgement is confined to the testimony of the mortgagors in this case, it is not sufficient to support a finding contrary to the certificate of acknowledgement and the affirmative testimony of the notary himself.") The affidavit of RCS representative Metcalfe, the 2004 loan documentation RCS has produced, and plaintiff's deposition testimony show there is no dispute that a number of plaintiff's personal financial and other records were included in the 2004 loan file that RCS received when servicing of the 2004 loan was transferred from BOA to RCS. Absent any competent evidence to suggest that First Franklin obtained these documents without plaintiff's consent as part of a scheme to generate a fraudulent loan, the only reasonable inference to be drawn from this undisputed evidence is that plaintiff provided this documentation in connection with the 2004 loan application and execution of the loan. Plaintiff has not offered any competent evidence to rebut the inference that he provided a number of his personal documents for purposes of generating the 2004 loan. Although plaintiff testified at his deposition that these documents were obtained without his consent, he also repeatedly emphasized that he did not know how First Franklin had obtained the documents. (Doc. 75-1 at 56-58). Only after his deposition had been taken and in response to RCS's motion for summary judgment did plaintiff offer an explanation as to how these documents *possibly* could have made their way into the 2004 loan file. (Doc. 111 at 23-24; Docs. 87, 110-1). However, plaintiff's affidavit testimony on this issue is not competent evidence for the reasons explained above and has been excluded from the evidence.

Further, plaintiff's allegations made in opposition to RCS's motion for summary judgment clearly demonstrate that plaintiff's theory as to how his personal documents became part of the 2004 loan file is nothing more than unsupported speculation. As best the Court is able to discern, plaintiff theorizes that contractors who worked on his home during 2004, who were

apparently paid with proceeds from the home improvement loan from Home Ownership that was

originated in October 2004, somehow obtained his personal papers and transferred them to

Gateway Mortgage to create the fraudulent loan that was executed six months earlier on

February 10, 2014.  Plaintiff posits the following theory:

> **As the [deposition] transcript will show Plaintiff had no explanation he could give under oath as proper testimony of fact as to how this happened.** *However there is plausible explanation for this.*  As now testified in Supplemental Affidavit No. 2 [], in 2004, prior to the [2004 loan], Plaintiff gave his License to Home Ownership for the deferred loan [balloon mortgage].  To the first hand observation of the Plaintiff Home Ownership employed many different contractors to work on my house.  It is during this year that a photo of my License got in the files of Members Title Agency.  I gave my driver's license to Home Loan Ownership who gave me the deferred loan.  Gateway Mortgage based in Cincinnati was either the originator or the broker of my 1999 mortgage.  Darrin Monhollen was with Gateway mortgage.  I did not talk to Gateway Mortgage about any kind of refinancing.  Plaintiff has affirmed The documents Members Title produced at deposition show that Members Title worked with Darrin Monhollen as the originator or broker for this false loan.  Upon examination of the same, Darrin Monhollen is identified as the interviewer on the illegible Uniform Residential Loan Application on which someone forged my signature.  As self evident observable fact my signature on the driver's license does not resemble any of my supposed signatures on those loan documents.  In the documents produced by Members Title, there is a document in these papers where a forged application is present to get my tax information from the IRS.  Defendants produced in discovery the 1999 mortgage copy and include a copy the Divorce decree and the Drivers' License issued 3/19/2003 expires 3/19/2007 and the other documents Defendant claims is proof Plaintiff participated in this spurious loan.  Nobody ever interviewed me for this loan but someone forged an application form on which they forged my signature and the signatures on all the loan documents were not executed by me as testified in affidavit of record before the court, There were many different companies working with Home Ownership doing work on the house in 2004.  Upon best belief and knowledge the opportunity was present for a Gate Way worker to gain a copy of my [driver's license] used in the making of the Gate Way loan and the other personal documents that made their way into the files of the spurious loan to be used in the spurious loan later that year.

(Doc. 111 at 23-24) (emphasis in original).  Plaintiff's speculative allegations are insufficient to

carry his burden on summary judgment to show there is a genuine issue of material fact.  *See*

*Bryant v. Bigelow*, 311 F. Supp.2d 666, 669 (S.D. Ohio 2004) (if the moving party carries its

initial burden of showing the absence of a genuine issue of material fact as to an essential

element of the non-movant's case, then the non-moving party must set forth specific facts

showing there is a genuine issue for trial). There is no competent evidence to support plaintiff's

allegations. Ms. Metcalfe stated in her affidavit that plaintiff's personal documents were

included in the records that BOA transferred to RCS when BOA transferred servicing of the

2004 loan to RCS. (Doc. 79, ¶ 5). The dates of the documents and their inclusion in the 2004

loan file, coupled with the lack of evidence to support a finding that anyone other than plaintiff

obtained and provided his personal financial and other records to First Franklin, allow only one

reasonable inference to be drawn from the undisputed evidence: plaintiff provided this

documentation in connection with the 2004 loan application and execution of the loan.

　　　For these reasons, there is no genuine issue of material fact as to whether plaintiff applied

for the 2004 loan and executed the 2004 loan documents. Plaintiff has not produced competent

evidence that First Franklin engaged in a scheme to generate a fraudulent loan pursuant to which

plaintiff's signature was forged on multiple documents; the closing agent falsely notarized

multiple documents bearing plaintiff's signature and fraudulently verified plaintiff's identity; and

First Franklin obtained a myriad of plaintiff's personal financial and other records used to

generate the loan without his consent. Plaintiff's "version of events is blatantly contradicted by

the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007)

("When opposing parties tell two different stories, one of which is blatantly contradicted by the

record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment."). Absent competent evidence

that the 2004 loan was fraudulently executed, plaintiff cannot prevail on a fraud claim against

RCS. Nor can plaintiff pursue a claim against RCS for vitiation of an allegedly fraudulent

mortgage contract. Accordingly, defendant RCS's motion for summary judgment (Doc. 85) should be granted.

## VI. Defendant BOA's motion for summary judgment (Doc. 83)

Defendant BOA moves for summary judgment on plaintiff's fraud claim against it on the ground there is no evidence to substantiate plaintiff's claim. (Doc. 83). Defendant BOA alleges there is no admissible evidence to show that the 2004 loan was forged or was executed without plaintiff's consent. To the contrary, BOA argues that the only admissible evidence of record strongly suggests that plaintiff obtained the 2004 loan to comply with the terms of his divorce decree entered in September 2003, which is part of the 2004 loan file. (*Id.* at 6). BOA further notes that the mortgage challenged by plaintiff is notarized, and there is a presumption under Ohio law that the notary acted lawfully in notarizing plaintiff's signature. (*Id.*). In addition, BOA alleges there is no evidence that it made any misrepresentations or acted with an intent to deceive plaintiff in connection with the 2004 loan, but in fact plaintiff admits both that he does not know who committed the alleged fraud and that BOA had no knowledge of the alleged forgery. (*Id.* at 6-7, citing Doc. 75-1 at 67, 115).

In response, plaintiff alleges that the loan documents defendants have produced to demonstrate the validity of the loan are not sufficient to overcome his sworn testimony that he did not execute the 2004 loan. (Doc. 108). Plaintiff alleges that the following evidence, together with his testimony that he did not execute the 2004 loan and had no knowledge of it, establishes the existence of material factual disputes as to the validity of the 2004 loan: the deposition testimony of Randall Craycraft, managing member of Members Title; the deposition testimony of Darren Rudolph, an employee of Landsel Title Agency; and contradictions in and between the Settlement Statement for the 2004 loan and Members Title's disbursement history, which the

witnesses purportedly could not explain in their deposition testimony.  Plaintiff states that he does not allege that BOA committed fraud.  (Doc. 108 at 23).  Instead, plaintiff alleges that he is accusing BOA of "willfully and egregiously continuing to enforce a loan created by forgery long after they had [] received it [] or investigating to find out who did it."  (*Id*. at 23-24).  Plaintiff alleges that it is his burden to establish the loan was "spurious" and is no longer enforceable against him, and to prove the damages he has suffered in the form of excess payments on the 2004 loan.  (*Id*. at 24).

The Court has determined that plaintiff's claim against BOA sounds in fraud.  (*See* § IV(c), *supra*).  To succeed on his fraud claim against BOA, plaintiff must demonstrate there is a genuine issue of material fact as to whether BOA can be held liable for fraud in connection with the 2004 loan, either in its capacity as successor to First Franklin or as the servicer of the loan.

For the reasons explained in connection with plaintiff's motion for summary judgment, plaintiff cannot prevail on his fraud claim against BOA.  Plaintiff has not produced evidence that creates a genuine issue of material fact as to whether BOA knew or had reason to know at any time that the 2004 loan documents were not valid.  The evidence plaintiff relies on to call into question the validity of the 2004 loan is not material to his claim against BOA.  Plaintiff has not shown that alleged discrepancies in the witnesses' deposition testimony and in certain totals reflected in the 2004 loan documents, even if accepted as true, have any bearing on whether BOA knew or should have known that plaintiff did not consent to or sign the 2004 loan documents.  Absent evidence that BOA knew or had reason to know that the 2004 loan documents were forged or otherwise executed without plaintiff's consent, plaintiff cannot show that BOA acted with an intent to mislead plaintiff into relying on the forgery by continuing to collect payments on a mortgage it knew to be fraudulent.  Nor has plaintiff produced evidence to

show that BOA can be held liable for the alleged fraudulent acts of First Franklin.  There is no evidence regarding BOA's potential liability for acts of First Franklin in BOA's capacity as "successor"; no evidence that First Franklin committed any fraud in connection with the 2004 loan; and assuming, *arguendo*, that First Franklin did commit fraud, no evidence to show that BOA had any knowledge of or involvement in any fraud committed by First Franklin in connection with the 2004 loan.  Accordingly, defendant BOA's claim for summary judgment against plaintiff (Doc. 83) should be granted.

## VII.  Conclusion

Plaintiff has been given ample opportunity to obtain expert testimony, conduct discovery, and present affidavits and other evidence to support his claim that the 2004 loan was fraudulently generated and that defendants BOA and RCS can be held liable for the fraud.  Plaintiff nonetheless has failed to produce sufficient evidence to raise a genuine issue of material fact on his claims against defendants BOA and RCS.  Further delay of the proceedings to allow plaintiff additional time to attempt to marshal evidence in support of his claims is not warranted.

### IT IS THEREFORE ORDERED THAT:

(1)  Plaintiff's motion for leave to file a memorandum in opposition to defendant RCS's motion for summary judgment (Doc. 102) is **DENIED** as moot.

(2) Plaintiff's motion for review of the summary of events and motion for a hearing on his request for review (Docs. 123, 125) are **DENIED**.

(3) Plaintiff's "Request for Leave of Court to Take Another Look at the Signatures" (Doc. 121) and plaintiff's "Motion for Another Look at the Signatures for the Pursuit of Truth and Justice" (Doc. 122) are **DENIED.**

(4) Plaintiff's motion for an extension of time to file two supplemental affidavits in support of his claims (Doc. 86) and plaintiff's motion for leave to file the two supplemental affidavits with any references to Curtis Baggett omitted (Doc. 110) are **DENIED**.

(5) Defendant BOA's motion to strike the second supplemental affidavit (Doc. 96) is **DENIED** as moot.

(6) Plaintiff's "Request for Leave of Court to Allow the Court to See This Truth" (Doc. 132) is **DENIED**.

## IT IS THEREFORE RECOMMENDED THAT:

(1) Plaintiff's motion for leave to obtain another handwriting expert (Doc. 109) be **DENIED.**

(2) Plaintiff's motion to designate Wendy Carlson as his handwriting expert (Doc. 112) be **DENIED.**

(3) Plaintiff's motion to amend his previous request to designate a new handwriting expert (Doc. 128) and plaintiff's amended request (Doc. 129) be **DENIED.**

(4) Plaintiff's motion for summary judgment (Doc. 82) be **DENIED.**

(5) Defendant BOA's motion for summary judgment (Doc. 83) be **GRANTED.**

(6) Defendant RCS's motion for summary judgment (Doc. 85) be **GRANTED.**


Date: 1/6/16

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KALEMBA BALIMUNKWE,
    Plaintiff,

    vs.


BANK OF AMERICA, N.A.,
AS SUCCESSOR TO FIRST FRANKLIN
FINANCIAL CORP., et al.,
    Defendants.

Civil Action No. 1:14-cv-327
Black, J.
Litkovitz, M.J.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).